JOSE M. GARCIA ET AL. v. PATROCENIA SANDERS ET AL.

Decided October 29, 1896.

1. Declarations Affecting Belief or Intention—Right to Arrest for Theft.

In a suit for injuries by the death of one whom defendants claimed to have killed in self-defense while attempting his arrest under article 364, Code Criminal Procedure, evidence that another person when arrested a few minutes before had confessed assisting deceased to kill and conceal a stolen cow on the previous night was admissible to show the essential fact that defendants had reasonable ground to suppose the cow to have been stolen by deceased. (Pp. 107, 108.)

2. Cumulative Proof.

Defendants were entitled to the evidence for that purpose though they had already introduced evidence that they had information on the subject from another person on the night before. (P. 108.)

3. Same—Self Defense—Declaration of Defendant Affecting His Interpretation of Conduct of Deceased.

Such evidence was also admissible as tending to show, as viewed from the standpoint of defendants, the purpose of deceased in his subsequent acts, claimed by them to have put them in danger of life and to have justified them in the killing, and to show whether, and when, it reasonably appeared to the posse that they or either of them were in danger of life or serious bodily injury. (Pp. 108, 109.)

4. Same—Error Not Harmless.

The fact that the testimony of plaintiff, the wife of deceased, upon which the verdict seems to be based, directly contradicted that of defendants as to threatening and violent acts by deceased, did not render such error harmless. The jury were not obliged to accept or reject either account in toto and may have proceeded upon a belief as to what the real facts were which would render the rejected evidence material. (P. 109.)

5. Same.

Neither is such error rendered harmless by the subsequent admission of substantially the same evidence as impeaching the person by whom the declarations were claimed to have been made and who, as a witness for plaintiff, had denied making them, where the jury were instructed not to consider such evidence for any purpose except to impeach the credibility of the witness. (Pp. 109, 110.)

ERROR to Court of Civil Appeals for First District, in an appeal from Neuces County.

Suit by Patrocenia Sanders, the widow, joined by her minor children, against Jose M. Garcia et al., for damages by killing her husband, T. M. Sanders, in which plaintiffs recovered $9000 and the judgment was affirmed by the Court of Civil Appeals.

*Upson & Bergstrom, C. C. Pierce, E. A. Atlee, F. B. Earnest, J. B. Wells* and *D. McNeil Turner,* for plaintiffs in error, J. M. Garcia et al.— The actions of defendants just immediately before the attempted arrest of Sanders, and all information received by them regarding the alleged theft, was properly admissible as throwing light upon the motives and condition of the mind of defendants in attempting the arrest of Sanders and subsequent firing upon Sanders when he assaulted them. The declarations of Longoria, a participant in the crime of theft with Sanders, made within five minutes of the shooting, was additional information, and confirmatory of the previous information received by defendants, and was admissible to show that the defendants had reasonable and probable grounds to believe a crime had been committed by Sanders and his co-confederates, and that the stolen property which they were seeking to recover was still in his possession and on his premises; also to show that Sanders was actually guilty, and had every reason to resist arrest to prevent the discovery of the evidences of his guilt; as he actually did. And also as res gestae tending to explain the conduct of the officer and posse in attempting defendant's arrest, and that they had good reason to believe that Sanders would resist arrest. C. C. P., art. 229 and 343; Neyland v. State, 13 Texas App., page 536; Jacobs v. State, 28 Texas App., page 80; Cooley on Torts, pp. 174 and 175.

The court erred in sustaining plaintiff's objection to the testimony of plaintiff's witness, J. M. Garcia, while testifying on his own behalf, that a few minutes before the wounding of deceased, defendants had met Pablo Longoria at Sanders' pasture gate, and that Pablo Longoria then told defendants that he had assisted Sanders in killing and skinning a cow in his back yard the night previous, and that the blood on his clothes was some of the blood of that cow, and thereupon, after admitting the testimony, the court erred in instructing the jury that such testimony was admissible only for the purpose of impeaching the witness Longoria, and that they will consider it for no other purpose, said evidence being relevant, material and admissible upon the issue of the good faith of defendants relying upon credible information to assist the officer in arresting the deceased only and repelling the idea of any conspiracy entered into by defendants for the purpose of wounding or killing the deceased.

*J. O. Nicholson, Dodd & Mullaly* and *McCampbells & Welch,* for defendants in error, Patrocinia Sanders et al.—It appears by appellants'

sixth assigned error that the court did admit the said evidence of Jose M. Garcia, and that therefore any error in the original ruling excluding it was cured.

The testimony offered was irrelevant and immaterial, and tended to elucidate no issue before the jury, and the objections to it were correctly sustained by the trial court. For testimony of contradictory statements made upon other occasions by a witness must relate to matters relevant to the issues as made by the pleadings, and evidence establishing contradictory statements collateral to the issues made is incompetent and irrelevant. Noel v. Denman, 76 Texas, 306; Walker v. State, 6 Texas Appeals, 576.

DENMAN, Associate Justice.—This suit was brought by defendants in error, wife and children of Theodore M. Sanders, to recover from plaintiffs in error damages for the alleged wrongful killing of said Sanders. Upon the verdict of a jury judgment was rendered by the trial court in favor of defendants in error for nine thousand dollars, which judgment having been affirmed by the Court of Civil Appeals, the cause has been brought to this court by writ of error.

On the trial one of the grounds upon which plaintiffs in error sought to justify the killing was that they were acting in self-defense while attempting to arrest Sanders and seize property stolen by him in pursuance of the following provision of our Code of Crim. Proc.:

"Art. 364 (343). All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen and bringing it with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify such seizure there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay."

Patrocenia Sanders, for defendants in error, testified that about sunrise, Sanders, her husband, was standing outside the door making a cigarette when Pedro Servin came and told him that a great many armed people were coming, whereupon he stepped back into the house, got his carbine and walked out of the door onto the gallery, the armed men, among whom were plaintiffs in error, having by that time arrived at the yard gate, which was only a few steps from the gallery, whereupon Jose M. Garcia said to Sanders, "We want to speak to you as friends," whereupon Sanders went and opened the gate with his right hand and stood in front of the gate, with his carbine in his left hand, and as he opened the gate Victor Perez, whom Sanders had called several times as he went from the gallery to the gate, passed through the crowd in front of the gate and came into the yard, whereupon Jose M. Garcia said, "kill him," and they took Sanders by the arms and shot him, a great many shots being fired by plaintiffs in error, but none by Sanders; that when Victor Perez was passing through the crowd of armed men approaching the gate, Margareto

Guerra pointed a pistol at him and tried to stop him, but Perez continued and passed him, going at a good gait, neither fast nor slow; that no cow was killed at the ranch the night before; that Sanders had none to kill; and that at that time there were working on Sanders' ranch Ramon Longoria, Pablo Longoria, Victor Perez and Pedro Servin, who lived in little jacals just outside of the yard.

Jose M. Garcia, for plaintiffs in error, testified that on the evening of April 26th, '91, he, in company with the sheriff and others, two of whom were deputies, were looking for a stolen cow and late in the evening he, with Tiburcio Guerra, one of the deputies, returned to Los Ojuelos ranch, when they were informed by the justice of the peace that an accusation for theft had been made against Theodore M. Sanders, Victor Perez and Pablo Longoria; that the justice, not being able to write English, procured another to write a warrant for the arrest of said parties and delivered it to said deputy sheriff, who stated that he knew Sanders to be a desperate man and would not undertake his arrest alone, whereupon the justice, having informed him that he had the right to summons the neighbors to help him execute the warrant, the said deputy summoned the witness and various others, including plaintiffs in error, as a posse to aid him in making the arrest; that during the early part of the night the parties summoned assembled at witness' store, where they remained until just before daylight, thinking that it would not be best to arrive at Sanders' place and make the arrest until daylight; that during the time they were at the house of witness during the night Pablo Martinez, who had made the complaint before the justice, informed them that late in the evening he had seen Victor Perez and others driving a hobbled cow into Sanders' enclosure, and that at the request of the justice he had returned after dark, when he saw Sanders and Victor Perez and other employes of Sanders kill the cow inside of said enclosure; that the warrant was made out by the justice as aforesaid after the posse was summoned by the deputy; that just before day they started to the Sanders ranch with the justice of the peace and the deputy sheriff, and arrived there about half past six or seven in the morning; that just before they entered the ranch gate they met Pablo Longoria, one of Sanders' employes, coming out of Sanders' pasture, from whom, in response to questions, they learned that Sanders, Victor Perez and Pedro Servin were at the house; that they placed said Longoria in charge of two of the posse and the remainder proceeded to the house, and as they approached the house Sanders, who was in the house, called to Victor Perez, who was off some distance, and that said Perez, in response to said call, came running toward the house, whereupon the justice of the peace, deputy sheriff and posse advanced to the front yard gate, when Sanders emerged from the house with his carbine in his right hand, and with his left hand opened the gate and called to Victor Perez again, and told him to come in a hurry, and Margareto Guerra, one of the posse, undertook to stop Victor Perez and at the same time the deputy spoke to Sanders and told him he had a warrant for his arrest,

whereupon Sanders stepped out in front of the gate and waved his hand and said, "get away, sons of bitches," about the same time the justice told Sanders to restrain himself, and the witness, seeing that Sanders was very much irritated and infuriated, said, "Mr. Sanders, we come as friends;" that when Sanders saw that Guerra was trying to stop Victor Perez he threw a cartridge in his carbine and fired at Guerra, whereupon Guerra ran and Sanders, having turned his carbine in the direction of the balance of the posse, Laurel, one of the posse, undertook to seize Sanders' carbine, whereupon Sanders fired at Laurel, and Laurel shot Sanders about the same time, the witness not being able to tell which fired first; that thereupon a number of shots were fired by the posse and Sanders fell, whereupon the deputy directed some of the posse to remain there while he, with the rest, would go and see where the stolen animal was, and proceeded to the rear of the house, where they found blood of the butchered animal on the ground, and following the trail made by the hide being dragged away to one of the little jacals near by, found the four quarters of the animal therein, and afterwards found the hide secreted in the weeds near by, when they recognized it as belonging to Martinez, an old man who lived at the Los Ojuelos ranch.

The testimony in the record is very voluminous, but the above synopsis of that of Mrs. Sanders, principal witness for defendants in error, and of Jose M. Garcia, one of the plaintiffs in error, is sufficient to enable us to understand such assignments as we deem it necessary to discuss.

While said witness, Jose M. Garcia, was on the stand, plaintiffs in error offered to prove by him that when they took charge of Longoria at the pasture gate a few minutes before they reached Sanders' house, as detailed in his testimony above, the justice of the peace asked Longoria, whose clothes were bloody, how he got that blood on his clothes, and that Longoria then answered that it was the blood of a deer that had been killed the evening before at Sanders' house, but that after being further questioned by the justice of the peace, Longoria stated that Theodore M. Sanders, Victor Perez and Pedro Servin had killed a cow in the back yard of Sanders' house the night before, and that he (Longoria) assisted in cutting up the cow by order of Sanders, and that the blood was on his clothes from the cow. To which testimony defendants in error "objected on the ground of irrelevancy, hearsay, incompetency and not part of the res gestae;" which objection the court sustained and refused to permit said witness to testify to said statement by Longoria; to which ruling of the court in excluding said testimony plaintiffs in error duly excepted and reserved their bill of exceptions, and assign as error here that the Court of Civil Appeals erred in not holding that the District Court committed error in excluding said testimony.

In order to justify under the statute above quoted it devolved upon plaintiffs in error to show that at the time of the killing (1) they had reasonable ground to suppose the cow to have been stolen by Sanders, and (2)

that in attempting to arrest him or seize the property without using any more force than was necessary to effect such purpose, Sanders did some act which, viewed from their standpoint, reasonably put them or one of them in danger of his life or serious bodily injury, and that to avert such threatened danger they or one of them slew Sanders.

It would be difficult to imagine what evidence would be more cogent to establish the first proposition than the reluctant statement extorted from Longoria by the posse as they approached his employer's house. It is true that they claimed to have had information upon that subject from Pablo Martinez as shown above, but they were entitled to lay before the jury every fact which would tend to establish that issue.

Again we are of opinion that the rejected evidence tended to establish the second proposition above. If it be assumed that the posse under said statute had the right to make the arrest it was lawful for them to become actors, not only in overcoming all resistance offered by Sanders to their lawful attempt to seize him, but also in taking his life if he, while they were lawfully attempting to seize him, so acted as to make it reasonably appear to them that they, or either of them, were from his acts in danger of their lives or serious bodily injury. Would the excluded evidence have given the jury any assistance in determining the question whether and when it reasonably appeared to the posse, from all the circumstances surrounding them at the time that they, or either of them, were in danger of life or serious bodily injury? Ordinarily the jury might attach little importance to the fact that Sanders was calling Victor Perez and that the latter was so insistent and determined upon passing inside of the gate, but if they had had before them the rejected statement of Longoria, which had been made to the posse a few moments before, and was then fresh in their minds, might they not have given it some weight in determining whether and when it appeared to the posse that they were in danger, and might not the jury have concluded as a fact in view of the actions of Sanders and Victor Perez that it reasonably appeared to the posse that they were in danger of life or serious bodily injury if they waited until Victor Perez, whom they had been informed was one of the guilty parties, should get into the house where, probably, he would secure a weapon and aid in resisting arrest, or probably in an attack upon them? Or might the jury not have concluded from the fact that the posse had been so recently informed by Longoria of the guilt of both Sanders and Victor Perez, when taken in connection with their other acts upon the ground, that it reasonably appeared to the posse that they were in danger of life or serious bodily injury, though the statement of Mrs. Sanders, that Sanders fired no shot, be true. If to the admitted facts that Sanders emerged from his house armed, that as he advanced to the gate he repeatedly called his employee, Victor Perez, to come inside, and that Perez made his way through the possee in response to his master's calls notwithstanding one of them tried to stop him at the point of a pistol, be added the excluded evidence of Longoria informing the posse that both Sanders and Victor Perez were

guilty of the theft, the evidence of which was in all human probability then concealed upon the premises, might the jury not have concluded therefrom that it reasonably appeared to the posse that Sanders and Perez were preparing for a deadly conflict in resistance of the lawful right and duty of the posse to make the arrest, and that therefore they were in danger of life or serious bodily injury, though no shot had been fired by Sanders. We think these questions must be answered in the affirmative. Under all the circumstances as they appeared to the posse it was a question of fact for the jury to determine whether and when it reasonably appeared to the former that they were in danger of life or serious bodily injury; and upon this issue the information which the posse had just received from Longoria of the guilt of Sanders and Perez was as relevant as was evidence of the dangerous character of Sanders. The jury might not have considered it unreasonable for the posse with the statement of Longoria in their minds to have regarded the conduct of Sanders and Perez as evidencing greater hostility and danger to them than they would but for said statement. The jury were not bound to accept or reject in toto the testimony of either Mrs. Sanders or Garcia, but could have accepted as true a portion of the testimony of each or either of them, rejecting the remainder, in order to base their verdict upon what they believed to be the real facts. Therefore the litigants had the legal right to submit all proper testimony in order that the jury might select such as they believed to be true upon which to base their verdict; and when such testimony has been rejected it is no answer to say, as is contended here, that plaintiffs in error were not injured, because the jury must have believed the testimony of Mrs. Sanders in order to have reached their verdict. It may be that the jury concluded that the posse fired before there was any apparent danger and that they would not have so concluded had the testimony been admitted.

It was, however, insisted by counsel for defendants in error on oral argument in this court, that any supposed error in excluding said testimony was cured by the fact that the same witness, Jose M. Garcia, in rebuttal testified to the excluded statement made by Longoria to the posse. On the face of the statement of facts this appears to be true, but a bill of exceptions in the record shows that after said testimony was excluded defendants in error placed said Pablo Longoria on the witness stand in rebuttal and he denied that he made any such statement to the posse, and that thereafter plaintiffs in error again placed Jose M. Garcia upon the stand and asked him whether Longoria had made such statement to the possee, and in response to such question he stated that he had made such statements, but the court, over objections of plaintiffs in error, then and there instructed the jury that they must not consider the answer of the witness Jose M. Garcia for any purpose except to impeach the credibility of the witness Longoria. From this statement it is evident that the court did not give the plaintiffs in error the benefit of the excluded testimony upon the issues above discussed, and that its admission for the limited

purpose of impeaching the witness Longoria did not in any sense cure the error committed in its original exclusion. The probable injury resulting from the error in excluding said testimony becomes more apparent when it is observed that the court charged the jury that the warrant referred to in the testimony was void.

For the error above the judgment of the Court of Civil Appeals and trial court will be reversed and the cause remanded. We express no opinion upon any of the other assignments made in this court, for the reason that some of them are not supported by the record and the questions presented in others will probably not arise on another trial.

*Reversed and remanded.*