HOUSTON BELT & TERMINAL RY. CO. v. VOGEL et ux. (No. 6959.)

(Court of Civil Appeals of Texas. Galveston. June 21, 1915. Rehearing Denied Oct. 14, 1915.)

1. TRIAL ⊂⇒139, 140—PROVINCE OF JURY—WEIGHT OF TESTIMONY.

The credibility of witnesses and the weight of testimony is a question peculiarly for the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332–335, 338–341, 365; Dec. Dig. ⊂⇒ 139, 140.]

2. EVIDENCE ⊂⇒568 — OPINION EVIDENCE.—EXPERT TESTIMONY.

A jury are not concluded by opinion evidence, but may apply their own experience and knowledge in solving the question.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2392–2394; Dec. Dig. ⊂⇒568.]

3. EMINENT DOMAIN ⊂⇒307 — CONSTRUCTION OF RAILROAD—DAMAGES.

Whether plaintiff's property was depreciated by reason of the construction of a railroad *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 820–824; Dec. Dig. ⊂⇒ 307.]

4. EVIDENCE ⊂⇒474—OPINION EVIDENCE.

Where plaintiff testified to his familiarity with conditions and knowledge of the market value of his property, which he claimed had depreciated by reason of the construction of a railroad, he was competent to testify as to the depreciation, and, notwithstanding that on cross-examination he became confused as to the distinction between actual and market value, his testimony could not be stricken; that fact going only to the weight of his testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2196–2219; Dec. Dig. ⊂⇒474.]

Appeal from District Court, Harris County; Norman G. Kittrell, Special Judge.

Action by John Vogel and wife, against the Houston Belt & Terminal Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

See, also, 156 S. W. 261.

Andrews, Streetman, Burns & Logue, Coke K. Burns, and W. L. Cook, all of Houston, for appellant. John Lovejoy and Presley K. Ewing, both of Houston, for appellees.

McMEANS, J. John Vogel and wife sued the Houston Belt & Terminal Railway Company, alleging damages by way of depreciation in the market value of certain real estate in the city of Houston owned by them, the depreciation complained of being charged to the fact that the Houston Belt & Terminal Railway Company had built certain tracks in front of said property and had carried on railway operations over said tracks from and after the early part of the year 1910. Defendant answered by general denial, and pleaded that the property, instead of depreciating, had enhanced in value by reason of the construction. The case was tried before a jury upon special issues, and damages to plaintiffs' property from railroad construction and operations in proximity thereto were found by special verdict, as follows:

"(1) What was the fair market value of plaintiffs' property, inclusive of improvements thereon, immediately before the construction and operation of the defendant's railroad in the vicinity of it? Answer: $10,000.

"(2) What was the fair market value of plaintiffs' property, inclusive of the improvements thereon, immediately after such construction and operation of defendant's railroad? Answer: $5,250.

"(3) If the market value of said property was less immediately after than immediately before the construction and operation of defendant's railroad, was the depreciation or decrease of value caused by such construction and operation of defendant's railroad? Answer: Yes."

On this verdict a judgment was rendered in plaintiffs' favor for $4,750, from which the defendant has appealed.

Appellant's first, second, third, fourth, and fifth assignments of error in different forms contend that the verdict was excessive, under the claim that the value found before the railroad operations, to wit, $10,000, was too large, and the value found after, to wit, $5,250, was too small. The claim is made, particularly in the first assignment, that the value fixed before the railroad operation was so grossly excessive as to indicate that the jury was actuated by sympathy, bias, prejudice, or some other improper motive.

[1–3] We shall not undertake to set out the testimony bearing upon the issues presented by the assignments, but find that the evidence adduced upon the trial fairly warranted the verdict in that regard. Seven witnesses, including the plaintiff John Vogel, testified as to the market value of the plaintiffs' property before and after the construction of defendant's railroad and the operations thereover, and no two of them agreed. Vogel's estimate was that the property, including the improvements thereon, was worth before the construction and operation $12,500, and after $6,000; his witness W. E. Carter placed the value before at $11,500, and after at $6,000; while the five following named witnesses placed the value as follows: W. H. Taylor, $5,187.50 before, and $8,750 after; J. W. N. Burkett, $5,400 before, and $6,250 after; J. H. McCracken, $6,000 before, and an increase in value of 30 to 50 per cent. after; L. W. Murdock, $5,500 before, and $11,000 after; and L. Dunn, $6,250 before, and the same amount after. As before shown, the jury found the value to be $10,000 before, and $5,250 after. There was testimony admitted which would warrant a finding that there was no demand for property situated as was plaintiffs' for other purposes than residences; and the witness last named testified that plaintiffs' property for residence purposes had decreased 75 per cent. by reason of the construction and operation of defendant's railroad. The wit-

nesses testified at length as to their knowledge of property values and as to their methods of arriving at the market value of plaintiffs' property both before and after the construction and operation of defendant's railroad; and it was a matter peculiarly within the province of the jury to weigh the testimony, judge the credibility of the witnesses, and to reach a conclusion supported by testimony to which they gave credence, or a conclusion reached by blending all the evidence admitted before them, aided by their own experience and knowledge of the subject of inquiry. We cannot say, therefore, that the jury, in arriving at the conclusion they reached, did so without regard to the testimony, or that their verdict was against the preponderance of the evidence to that degree which shows that manifest injustice has been done, or to indicate that they were actuated by sympathy, bias, prejudice, or some other improper motive. They were not concluded by the opinion of experts, but in weighing the testimony they had a right to apply their own experience and knowledge, and to deduce therefrom the truth as they believed it. Thus in Lawson's Expert and Opinion Ev. (2d Ed.) p. 496, under rule 61, it is said:

"We have seen the opinions of attorneys testifying to the value of lawyers' services are not conclusive on the jury, who may act independently or in opposition to them, applying to the case their own experience and knowledge of the character of the services. The same is true of the opinions of all experts and nonexperts as to value."

In Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028, it is said:

"While they [the jury] cannot act in any case upon particular facts material to its disposition resting in their private knowledge, but should be governed by the evidence adduced, they may, and to act intelligently they must, judge of the weight and force of that evidence by their own general knowledge of the subject of inquiry."

In Patterson v. Boston, 20 Pick. (Mass.) 166, it is said:

"Juries would be very little fit for the high and responsible office to which they are called, especially to make an appraisement, which depends on knowledge and experience, if they might not avail themselves of those powers of their minds when they are most necessary to the performance of their duties."

The jury were not compelled to credit all the testimony of any witness or reject it all (Railway v. Taylor, 20 Tex. Civ. App. 654, 49 S. W. 1055), but could have accepted as true a portion of the testimony of any or either of them, rejecting the remainder, in order to base their verdict upon what they believed to be the real facts. Garcia v. Sanders, 90 Tex. 109, 37 S. W. 314.

The assignments do not point out reversible error, and are overruled.

[4] The sixth assignment complains that the court erred in overruling defendant's motion to exclude all of the testimony of the plaintiff John Vogel as to the value of his property, the motion being predicated upon the grounds that the cross-examination of plaintiff developed that he was not qualified to give an opinion as to the market value of his property, since it showed that he had never been in the real estate business; that the estimate which he gave was not based on any actual sales with which he was familiar; that he had had no experience in fixing the values of property or estimating such values; and that his estimate was simply an unsupported opinion.

On a former appeal of this case a judgment in favor of plaintiffs was reversed, for the reason that the plaintiff John Vogel, although he testified that he was not acquainted with the market value of property in question, nor of the market value of property in that neighborhood, was permitted, over the objection of the defendant, to testify what its market value was. Houston Belt & Terminal Ry. Co. v. Vogel, 156 S. W. 261. On the last trial he testified on direct examination to the effect that he was specially familiar with the property in question, and the other property in the neighborhood of it, and of the location and character thereof, and had been for about 30 years, and had owned and lived on the property in question as the home of his family for 28 years, and had special knowledge of the uses to which the property in question and the other neighborhood property had been put during that period, which was for residence purposes exclusively, and of the uses to which the property was adapted before and since the railroad operations, and that from his knowledge and familiarity with the property in question and its improvements, which he had built, and with property in the neighborhood, its location and character, and the uses to which same had been put, and to which such was adapted, he had knowledge and an opinion of the market value of the property immediately before and immediately after the railroad operations in question on August 10, 1910, and that the market value of the same immediately before such operations was $12,700, and immediately after not more than half that amount, say, $6,000. Among other things, he testified on the direct examination:

"From my knowledge and the nature and character of this property, and the uses for which it is fit, and its location, I am able, from my knowledge of these things, to estimate and give an opinion of the market value of this property just before the railroad began its operations there. In my opinion, its market value, without the road there, at that time, was $6,000 a lot, with the improvements (there were 2⅛ lots). In my opinion, immediately after the road was constructed and began operations there, it was not worth hardly half of what it was worth before; I don't think it was. Nobody would have it; you couldn't sell it to anybody—that is, for home purposes. That is my opinion, from my acquaintance with the property and knowledge of it."

On cross examination he testified:

"I say that my property, in my opinion, just before these tracks were built there, with the

improvements on it, was worth $6,000 a lot; I mean $6,000 a lot, not for the entire property, but $6,000 a lot, was what I estimated it. I don't believe after those tracks were built in there that I could get half what it was worth before. Of course, I have got to have a place to live in, and it takes money to build another place to live on. I could not get hardly half for it now. I testified that, in my opinion, after those tracks were built there, immediately afterwards, my property was only worth one-half as much as it was before, because nobody else would have it; nobody would want to live there to make it a home."

On redirect examination, he testified:

"The opinion I gave counsel on the other side is not based on any experience as a real estate man, or anything of that sort, but it is based on my knowledge of the property and its uses—my own acquaintance with it and its uses."

After Vogel had testified on direct examination he was interrogated by defendant's counsel, and the questions propounded to him and his answers thereto are set out in defendant's bill of exceptions No. 3. The pertinent answers, reduced as far as practicable to narrative form, are as follows:

"I could not say that I knew what the market value of my property was before these tracks were built there in 1910; I just had an opinion. There was no transfer made before that, or at any time that I knew of, that I could judge by. I just had that opinion; thought it was worth that much. I didn't have an opinion as to the market value of that property upon the former trial of this case at all. I didn't know what it was. That thing came so sudden on me that I couldn't think of it quick enough to form an opinion on it, but I have now."

"Q. I will ask you whether or not, on the former trial of this case, you testified that you had no opinion as to the market value of that property. A. No, no; I did not."

"Q. I will ask you whether or not on the former trial of this case, Mr. Vogel, you testified that you didn't know the market value of this property, and was not acquainted with the market value of the property in that vicinity. A. I was not. I was not acquainted with it. I didn't have no opinion what it was. I have not been acquainted with all these laws, and I didn't know what it meant. I know what it means now. I think it means—I am not sure, but I think it means, if one man comes and wants to buy, and offers you so much, and you don't care to sell it, and sell it; I think it is that way; I don't know. After these tracks were built there I never heard of any demand for the property; I never had no offer made me; it was not on the market; it never was. I never put any price on it after these tracks were built. I have never been in the real estate business nor engaged in buying and selling property, and I have never had occasion to become familiar with property values in general, and I never bothered myself in regard to the demand for property of any particular kind, and am not familiar with property in different parts of the city and the demand for it—not familiar with these matters at all; and the price that the property was worth, in my opinion, before these tracks were built is simply my estimate, but that was not based on any experience which I have had in the real estate business."

After Vogel had thus testified the defendant's counsel moved to strike out his testimony as to the value of the property, upon the ground that it was developed on cross-examination that he was not qualified to give an opinion as to the market value of his property, his testimony showing that he had never been in the real estate business, and that the estimate which he gave was not based upon any actual sales with which he was familiar, and that he had had no experience in fixing or estimating value of property, and that his statement was simply an estimate and an unsupported opinion, which objection was overruled. The court, in approving the bill of exceptions, referred to the statement of facts as a part of the bill for the other testimony of the plaintiff as showing his qualification to express an opinion as to the market value of his property, a part of which we have referred to above preceding the testimony elicited by cross-examination and set out in the bill of exceptions. The witness also testified:

"I didn't know at that time [the former trial] what market value meant. Since then they have been talking about it, and I studied it over. I came to the conclusion that 'market value' means property is worth so much; that is the way I understand it now."

The statement of facts discloses that in the cross-examination referred to Vogel, in attempting to define "market value," used the word "have" where the word "care" is used in the bill of exceptions; thus his definition, as given in the statement of facts, is:

"If one man comes and wants to buy and offers you so much, and you don't have to sell it, and sell it, I think it is that way."

No assignment is presented by appellant complaining of the admission of Vogel's testimony, given on direct examination, to the effect that he knew the market value of his property, and as to the difference in values before and after the construction of the tracks and the operations thereover. He said he knew such values, and testified what they were. His testimony as to the amount of depreciation by reason of the construction and operation, we think, was clearly admissible even as against an objection timely urged. Railway v. Maddox, 26 Tex. Civ. App. 297, 63 S. W. 137; Railway v. Ruby, 80 Tex. 175, 15 S. W. 1040. Having plainly stated that he knew the market value, he was competent to testify as to such value (Davis v. Fain, 152 S. W. 218), and the matter brought out upon the cross-examination went only to the weight of the evidence and credibility of the witness, and not to the competency of his testimony (Railway v. Fagan, 72 Tex. 130, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776). The determination of whether the witness was qualified to testify as to the market value of his land under all the facts testified to by him was largely a matter resting within the discretion of the trial judge, and, as we have concluded that no abuse of that discretion has been shown, his action in admitting the testimony complained of will not be disturbed. In Byrd Irr. Co. v. Smyth, 157 S. W. 262, it is said:

"What is sufficient to show the qualification of a witness to give his opinion concerning the value of land is very largely in the discretion

of the trial court, and its conclusion upon such a matter will not be disturbed by the appellate court unless it be clearly shown that he has abused his discretion. G., C. & S. F. Ry. Co. v. Norfleet, 78 Tex. 321, 14 S. W. 703; Railway v. Houghton, [163 Mo. 470] 68 S. W. 718; 17 Cyc. 31; Telephone & Telegraph Co. v. Forke, 2 Willson, Civ. Cas. Ct. App. § 365."

It is our conclusion that the assignment should not be sustained.

The remarks made by plaintiff's counsel in the closing argument, even if not appropriate or proper, were not, in our opinion, so prejudicial to the defendant as to be calculated to cause or probably cause the rendition of an improper judgment, and the seventh assignment, which raises the point, is overruled without further discussion.

It is our opinion that no reversible error is pointed out in any of the assignments presented by appellant in its brief.

The judgment of the trial court is affirmed. Affirmed.