HOUSTON BELT & TERMINAL RY. CO. v. LYNCH et al. (No. 7148.)

(Court of Civil Appeals of Texas. Galveston. March 20, 1916. Rehearing Denied April 20, 1916.)

EMINENT DOMAIN ⬅307(4)—DAMAGES—VERDICT.

In a suit by owner of property injured by a railroad, a jury may not fix the value of the property, immediately after the wrong complained of, at a less sum than given by any witness.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 824; Dec. Dig. ⬅307(4).]

Appeal from District Court, Harris County; John A. Read, Judge.

Action by John Lynch and others against the Houston Belt & Terminal Railway Company. From a judgment for plaintiffs, defendant appeals. Reversed and remanded, unless remittitur be filed.

Andrews, Streetman, Burns & Logue, of Houston, for appellant. John Lovejoy and Presley K. Ewing, both of Houston, for appellees.

LANE, J.  This suit was brought in the district court of Harris county by John Lynch, Julia Lynch, John J. Lynch, James A. Lynch, and Mary M. Clasick against the Houston Belt & Terminal Railway Company, and other railway companies, which were later dismissed from the suit before trial, to recover damages to certain property owned by plaintiffs in the city of Houston, which they allege was caused by defendant by the construction of certain railroad tracks near said property, and by the operation of engines, cars, and trains over said tracks.

The trial was had before a jury, to whom the cause was submitted upon two special issues:

First.  "What was the fair market value of plaintiffs' property in question immediately before the construction in or about the summer or fall of 1910, after August 7th in that year, of the tracks of which plaintiffs complain, and the beginning of operations thereover?"  Second. "What was the fair market value of plaintiffs' property in question immediately after the construction in or about the summer or fall of 1910, after August 7th in that year, of the tracks of which plaintiffs complain, and the beginning of operations thereover?"

To the first question the jury answered, "$2,750;" and to the second, $1,450."  Upon these answers the court rendered judgment for plaintiff against the defendant Houston Belt & Terminal Railway Company for the sum of $1,300 damages and for $360 as interest thereon from date of said damage to date of the judgment.

Appellant presents the following assignment and propositions thereunder:

First Assignment: "The answer of the jury to special issue number two submitted to them, wherein the jury found that the market value of the property in question, just after the tracks complained of were constructed and operations begun thereover, was $1,450, is wholly without support in the evidence, for that the plaintiff himself admitted that the market value of said property at said time was from $1,500 to $1,600, and no further evidence as to the market value of said property at said time was offered by plaintiff, and all the witnesses called by the defendant testified that the value of said property at said time was in excess of what plaintiff admitted it was, and there was no sufficient evidence to justify the jury in discarding all the testimony, both of plaintiff and of defendant, and finding a less value of said property at said time than was established by such testimony."

Proposition: "First. Where the issue of the market value of real property at a given time is in dispute, and both the plaintiff and the defendant have by their testimony fixed such value, a jury is unwarranted in finding the value to be a sum not within the range of the testimony so given.  Second. Market value as distinguished from intrinsic value, being susceptible of proof by expert or opinion testimony only when such testimony comes from one peculiarly qualified to give it, is not presumed to be within the common knowledge of jurors, and the verdict of a jury finding market value must be supported by testimony and cannot stand against testimony.  Third. A verdict fixing market value at a less or greater sum than testified to by any witness is without support in the evidence and should be set aside, because such verdict is of necessity based either upon conjecture or upon the nonexpert opinions of the jurors, which opinions would not themselves be admissible in evidence were the jurors sworn as witnesses.  Fourth. The verdict in question, in that it finds the value of the property in dispute immediately after the construction of the tracks complained of and beginning of operations thereover to be a sum less than was testified to by the plaintiff himself, who was the only witness tendered by him upon that fact, is manifestly without support in the evidence, and based either upon conjecture or upon the nonexpert opinions of the jurors, which, not being admissible as evidence if offered, cannot be permitted to control the admitted and competent testimony to the contrary."

The testimony as to the value of the property immediately before and immediately after the acts complained of was as follows:

The plaintiff, John Lynch, testified:

"Immediately after the Houston Belt & Terminal Railway Company constructed the tracks and other connections in proximity to said property, which were constructed by it after August 9, 1910, and thereupon began its operations since conducted over such tracks, the fair market value of my property was about $1,500, or $1,600 would be the outside value, taking 'market value' as meaning the price which was to be paid for a piece of property if sold by one who desired to sell, but who was not obliged to sell, and bought by one who was under no necessity of buying it, but desired to buy it.  I am, from my especial familiarity with this property as I have testified about, acquainted with its market value at the times you have just inquired about.  In fixing those values, I have stated, I took into consideration the adaptation of this property to such uses as it was capable.  In fixing those values, I took into consideration two new main lines that are constructed practically around my place, and the raising of the roadbed or street to about three feet above the grade, sinking the ditch in front along my place and leaving it stand full of water the year around, and then in placing switches so that they were switching six or seven hours out of the twenty-four hours continuously—not continuously, but for an average of about seven or eight hours—switching right in front of my place continuously every twenty-four hours, and principally at night, and making the place impossible to live in or to be of any value for any uses.  I took into consideration the increase in the switching and of course the increase in trains; the noise and smoke of course is all greater. * * * All those constructions were put down there inside of two weeks, about August 10, 1910."

He testified on cross-examination as follows:

"I said that after 1910 it was only worth $1,500 or $1,600, the whole place.  As to whether I will take $1,600 for it now, after this suit is over and I see what treatment I get, I will talk to you about that.  I will take $1,600 for it if you will give me the balance in damages.  Without any question of damages, I will not take $1,600 for it, not right now.  As to whether I will take $2,000 for it; you can't make me take anything for it now, because it is in litigation.  As to whether I will take $2,500 for it; it is not a question of sale now, I understand.  It is not for sale right now, it is in litigation; I can't sell it."

The defendant's witness L. H. Dunn testified:

"In my judgment, the reasonable market value of that property in July of 1910 was approximately $4,000.  In my judgment, the reasonable market value of that property, considering its uses for residence purposes at that time, was $1,800.  I said that the reasonable market value of that property at the time stated was approximately $4,000.  I mean by that the property possessed that value for a warehouse site or

for any general store purposes. * * * I don't think there was any difference in the values of that property brought about by the change that was made in the condition of those tracks before 1910 and now. I don't think there was any difference in the value of Lynch's property caused by that change."

The defendant's witness J. W. Burkett testified:

"I am familiar with the reasonable market value of the property of Mr. Lynch just before that change was made in those tracks; I have my opinion on the subject. I think the lot by itself, it being a corner lot, was probably worth anywhere from $1,600 to $1,800 at that time, and the buildings and improvements there were worth about $1,000; that would be about $2,-800 for the whole thing, the lot and the improvements. I don't think there was any material change in the value of that property either way just after those improvements and changes were made in the tracks there. I think its fair market value remained the same."

The defendant's witness J. H. McCracken testified:

"I had a fair knowledge of values in and prior to August, 1910, when the Houston Belt & Terminal Railway Company put in two curved tracks there by Mr. Lynch's property in place of the two straight tracks on Walker avenue. In my judgment, the fair market value of those corner lots in there along the railroad tracks, the old Santa Fé tracks, was in the neighborhood of $1,500 to $1,800; that is the value of the lot not considering any improvements. I should judge the improvements on that lot could be put on there for about $1,000. Just after that change was made in those tracks in August, 1910, there was no great material difference in the value of that property, probably 10 or 15 per cent. I stated that before that change was made in those tracks, immediately before that, the corner lot was worth $1,500 to $1,800, not considering the improvements, and that the improvements were worth about $1,000. Just after those tracks were put in there, there was no great increase; it probably added a little more value to it for a small factory site, or something of that kind. It never was a desirable residence corner."

The defendant's witness F. F. Arnim testified:

"I am familiar in a general way with the reasonable market value of that lot of ground, lot one (1), in block 242, at a time just before the change was made in the tracks of the Houston Belt & Terminal Railway Company in August of 1910. At that time the fair market value of that lot, not considering the improvements on it, was $1,500. I think that would be a very fair value for it after those tracks were curved there in August of 1910. I don't see that that damaged the property any."

It clearly appears that no witness testified that the market value of plaintiff's property immediately after the acts complained of was less than $1,500. The jury in the face of this evidence found such value to be only $1,450, $50 less than the value fixed by any witness. To arrive at such value, they must have based their finding of such value upon their opinion formed from the description of the premises of plaintiff by the several witnesses as to its condition just after the acts complained of occurred; as to its close proximity to the tracks of defendant company, as detailed by said witnesses, as well as the noises created by passing trains, switching of cars, etc., testified to by the witnesses, and not from their personal or expert knowledge of the damaging effect such things would have on said premises. To say the least of it, it is clear that such finding was not based upon the figures given by any witness. From what has been said, it follows that if the propositions of appellant, hereinbefore set out, announce a correct rule of law in such cases as the present case, the judgment rendered in this case cannot stand, and must be reversed unless the same can be corrected by a remittitur. Appellee, however, contends that as the jury heard the witnesses describe the alleged damaged premises of plaintiffs as to its condition just after the acts complained of occurred—that is, as to the close proximity to the tracks of defendant, the noises caused by passing and switching of trains and cars, etc.,—and as they had before them, in connection with the testimony of the witnesses, sketches and pictures of the premises, which enabled them to see for themselves the nature of the construction of the tracks complained of, and their location with relation to plaintiffs' property, they could apply their experience and knowledge of such matters, and form their own conclusion therefrom as to the true value of said property, and that they would not be bound to stay within the range of the figures given by the witnesses. In support of this contention they cite the case of Houston Belt & Terminal Co. v. Vogel, 179 S. W. 268.

The case cited is one in which the jury found the value of the property damaged just before the acts complained of to be $5,250. Some of the witnesses had testified to a greater, and others to a less, value than that found by the jury, but none had fixed such value at $5,250, as found by the jury. In that case this court said:

"It was a matter peculiarly within the province of the jury to weigh the testimony, judge the credibility of the witnesses, and to reach a conclusion supported by testimony to which they gave credence, or a conclusion reached by blending all the evidence admitted before them, aided by their own experience and knowledge of the subject of inquiry. We cannot say, therefore, that the jury, in arriving at the conclusion they reached, did so without regard to the testimony, or that their verdict was against the preponderance of the evidence to that degree which shows that manifest injustice has been done, or to indicate that they were actuated by sympathy, bias, prejudice, or some other improper motive. They were not concluded by the opinion of experts, but in weighing the testimony they had a right to apply their own experience and knowledge, and to deduce therefrom the truth as they believed it. Thus in Lawson's Expert and Opinion Ev. (2d. Ed.) p. 496, under rule 61, it is said: 'We have seen the opinions of attorneys testifying to the value of lawyer's services are not conclusive on the jury, who may act independently or in opposition to them, applying to the case their own experience and knowledge of the character of the services. The same is true of the opinions of all experts and nonexperts as to value.' In Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028, it is said: 'While they [the jury] cannot act in any case upon particular facts material to its disposition resting in that private knowledge,

but should be governed by the evidence adduced, they may, and to act intelligently they must, judge of the weight and the force of that evidence by their own general knowledge of the subject of inquiry.' In Patterson v. Boston, 20 Pick. (Mass.) 166, it is said: 'Juries would be very little fit for the high and responsible office to which they are called, especially to make an appraisement, which depends on knowledge and experience, if they might not avail themselves of those powers of their minds when they are most necessary to the performance of their duties.' The jury was not compelled to credit all the testimony of any witness, or reject it all (Railway v. Taylor, 20 Tex. Civ. App. 654, 49 S. W. 1055), but could have accepted as true a portion of the testimony of any or either of them, rejecting the remainder, in order to base their verdict upon what they believed to be the real facts. Garcia v. Sanders, 90 Tex. 109, 37 S. W. 314."

The majority of this court differentiates the holding in case cited from the contention of appellee in this case, in that in the case cited the finding of value by the jury in that case was within the range of the testimony given by the several witnesses, while in the present case the value fixed by the jury was not within the range of the testimony given by the witnesses, but such value found by the jury was less by $50 than any witness fixed it. The holding of the court in the case cited finds support in many reported cases, and perhaps should be and is followed by this court, but the writer is unable to see the difference in the proposition of law announced in that case and the proposition contended for by appellee in this case. For if it is a matter peculiarly within the province of the jury to weigh the testimony of the witnesses in such case as the one cited, and to reach a conclusion from such testimony by blending all the evidence admitted before them, aided by their own experience and knowledge of the subject of inquiry to fix a value not given by any witness, it seems to the writer that the same peculiar province should apply in the present case. If the jury in one case may, by blending all the evidence admitted before them, aided by their own experience and knowledge, find a value of the property not given by any witness, then why not in the other? It seems to the writer that to say that in the first case the finding of the jury was within the range of the testimony of the witnesses furnishes no reason for permitting the jury to fix a value not fixed by any witness, while a different rule is applied to a case where the jury are denied the province to fix a value but little less than that fixed by any witness. Why should they not be allowed to fix the value in the last case, if permitted to do so in the first?

In the case of Zanesville, M. & P. Ry. Co. v. Bolen, 76 Ohio St. 385, 81 N. E. 684, 11 L. R. A. (N. S.) 1110, 10 Ann. Cas. 660, it is said:

"Jurors are selected partly because of their general intelligence and general knowledge of affairs, but not because of their supposed particular knowledge of the particular subject. The body may be made up of draymen, professional men, merchants, carpenters, shoemakers, tailors, men with little if any knowledge of real estate values; and yet it is proposed to allow them to substitute their judgment for that of men who, before they are permitted to testify, must qualify and show expert knowledge."

While the writer differs with the majority of the court in applying a different rule in the two cases discussed, he concurs with the majority in holding that in the present case the jury was not authorized to fix a value on the property in question, immediately after the wrongs complained of, at a less sum than that given by any witness. Zanesville, M. & P. Ry. Co. v. Bolen, 76 Ohio St. 376, 81 N. E. 681, 11 L. R. A. (N. S.) 1107, 10 Ann. Cas. 658; Washburn v. Milwaukee Ry., 59 Wis. 364, 18 N. W. 328.

Having concluded that the finding of the jury that the value of plaintiff's property immediately after the acts complained of was $1,450, a sum $50 less than the value of such property given by any witness, is not supported by any evidence adduced upon the trial, we further conclude that the judgment of the trial court based upon such finding of the jury must be reversed unless appellees shall, within ten days from the 16th day of March, 1916, file with the clerk of this court a remittitur of $62.40. In the event such remittitur is so filed the judgment as reformed will be affirmed.

In reaching the conclusion that the judgment of the trial court should be affirmed in case a remittitur of $62.40 be filed in this court, we have considered the fact that no witness has placed the value of plaintiff's property just after the acts complained of at less than $1,500, and that upon this evidence the jury could have fixed such value at $1,500, but not at a lesser sum; but it is evident that as the jury found and fixed such value at $1,450, in the nature of things they would in no event, though they had been confined within the range of values as given by the several witnesses, have fixed a greater value than $1,500. We therefore conclude that the difference between $1,450, the value fixed by the jury without evidence to support it, and $1,500, the minimum value given by any witness, to wit $50, together with $12.40, being the interest on $50 from date of the alleged damage to the date of judgment, as found by the court, is in excess of any judgment authorized by the evidence, giving credence to the finding of the jury that the property of plaintiff was of the value of $2,750 just before the acts complained of, and should be remitted before the judgment can be affirmed.

We have considered appellant's second assignment of error and overrule the same. We think the argument of counsel for appellant, as disclosed by the briefs of both parties, was not improper, but pertinent to the case, and did not call for or authorize the purported reply of counsel for appellees. We think the argument complained of was improper, and counsel is warned to refrain from

such argument in the future, but we cannot believe it possible that such argument influenced the jury in rendering their verdict in this case.

For the reasons hereinbefore pointed out, the judgment of the trial court will be reversed and the cause remanded, unless appellee shall within 10 days from the 16th day of March, 1916, file with the clerk of this court a remittitur of $62.40; but in the event such remittitur is so filed the judgment of the trial court will be reformed as indicated and affirmed.