JONES, Administratrix, Respondent, *v.* NORTHWESTERN AUTO SUPPLY CO., Appellant.

(No. 6,951.)

(Submitted November 16, 1932. Decided December 31, 1932.)

[18 Pac. (2d) 305.]

*Messrs. Wood & Cooke,* for Appellant, submitted an original and a reply brief; *Mr. Sterling M. Wood* argued the cause orally.

*Messrs. Tansil & Simmons* and *Messrs. Brown, Wiggen-horn & Davis,* for Respondent, submitted a brief; *Mr. R. G. Wiggenhorn* argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

This action was brought by plaintiff, as administratrix of the estate of Floyd Jones, deceased, to recover damages for the death of Floyd Jones, caused by the alleged wrongful acts of defendant and one Mrs. Jos. Russell. From a verdict and judgment for plaintiff, defendant appeals.

The record discloses that on the afternoon of October 24, 1930, one W. M. Schwantz, in company with Floyd Jones, was traveling in an easterly direction along the Laurel-Billings highway, in a Ford automobile owned by the former. At a point approximately 1,600 feet east of Canyon Creek a car was parked on the extreme right-hand side of the road. Schwantz drove his car back of the parked car and stopped a distance of 20 feet from it to enable a car approaching from the east to pass. When the approaching car had passed he started his car, turning to the left for the purpose of passing the parked car, and as he did so a Cadillac driven by Mrs. Jos. Russell struck the rear of his car, throwing Schwantz and Jones a distance of about 25 feet upon the hard surfaced road; when the two cars came to a stop the Russell car was resting upon the Schwantz car, on the left-hand side of the road, with the rear of the Russell car on the road; when the Russell car came to a stop, a car driven by one Ruddy, an agent and employee of defendant, had driven through the wreckage and to a point about 300 feet east; the road upon which the collision occurred was straight and level; 20 feet in the center was oiled and 5 feet on either side graveled.

The evidence shows that late in the afternoon of October 24, 1930, the car driven by Mrs. Russell passed the car driven

by Ruddy on the outskirts of Laurel; from that time until the accident Mrs. Russell was driving in a reckless manner and at a high rate of speed. Plaintiff's testimony discloses that about 2½ miles west of Canyon Creek the two cars were seen traveling "at quite a rapid speed, unusually fast," at the time the Cadillac car "was slightly in the lead; one was attempting to pass the other at that point." At a point about 2 miles west of Canyon Creek the two cars overtook and passed a car driven by A. C. Hovland, who was traveling at approximately 40 miles per hour; the two cars were running side by side with the front of the Ruddy car about even with the rear wheels of the Russell car. At the Yegen elevator a short distance east of the point where the Hovland car was passed, the cars were traveling at a speed of "over sixty" miles per hour, with Ruddy's car ahead; at the Yegen's beet dump, about 1½ miles west of Canyon Creek, the Ruddy car was leading but the Cadillac was "pulling up on the other one"; the cars were "doing better than sixty-five" miles per hour.

Ruddy was called as a witness for defendant and testified that Mrs. Russell passed his car on the outskirts of Laurel and traveled ahead of him at all times preceding the collision; she was driving "very recklessly" and at a high rate of speed; that he kept her car in sight and drove from 100 to 600 feet in the rear of her car; that when he passed Hovland, the Russell car was approximately 200 feet ahead; at a point near the Foster beet dump, a distance of 1½ miles west of Canyon Creek, Mrs. Russell "took after another car right along there. * * * The Cadillac and this other car sped on down there until they reached a point just west of the bend in the road at Canyon Creek"; that the Cadillac passed the brown car near Canyon Creek; that he saw the collision. "I saw the front end of the Cadillac rise up in the air, just reared up in the air and then it drove into the ditch on the left-hand side of the road," and the brown car drove through and he did not again see it. [The brown car was the one testified to by the witness as racing with the Cadillac.] He also testified that he was then driving about

250 feet behind the Russell car at a speed of approximately 50 miles per hour; that he drove past and through the wreckage and the two men lying in the road and brought his car to a stop at a point approximately 45 feet east of the car parked on the right-hand side of the road. He testified that, traveling at the rate of 50 miles per hour, he could stop his car in 100 feet. He denied the testimony of witnesses for plaintiff of the apparent race between himself and Mrs. Russell and the passing and repassing of their cars, although he did say: "I could not estimate the speed at which the Cadillac was traveling just before this accident occurred by reason of the fact that I was behind them. I know that they did not slacken their speed any from what they were going previously, up the road. I had been traveling around fifty-five miles or sixty, *and after Mrs. Russell passed me,* I slackened my speed; I don't know how much it was,—but I was not watching the speedometer."

M. R. Kirby, who was riding with Ruddy, corroborated his testimony.

It is asserted by defendant that the court erred in denying its motion for a nonsuit. Defendant did not stand on the motion but introduced testimony in its own behalf. The rule is well established in this jurisdiction that, when a defendant does not stand on a motion for nonsuit, he assumes the risk of aiding plaintiff's case and the evidence will be considered in its entirety. (*Little Horn State Bank of Wyola* v. *Gross,* 89 Mont. 472, 300 Pac. 277.)

Upon the trial plaintiff, over defendant's objection, introduced evidence tending to prove that, for a distance of 2½ miles westerly from Canyon Creek, Mrs Russell and Ruddy had engaged in a race and traveled at an excessive rate of speed, and counsel for defendant contend that the court erred in its rulings; it is argued that this character of evidence does not show that the cars were racing at the place of the accident, a distance of approximately 1,600 feet east of Canyon Creek. The evidence was properly admitted. The fact that the cars of Mrs. Russell and Ruddy were traveling at an ex-

cessive rate of speed or were racing while traversing the whole distance of approximately 2½ miles west of Canyon Creek may not create a presumption of law that they were so traveling or racing at the place of the accident, which was 1,600 feet east thereof; nevertheless it was clearly a fact for the jury to consider as affording an inference of fact with respect to their possible speed or racing when very shortly thereafter (a fraction of a minute) they reached the point of the accident. (Huddy on Automobiles, 8th ed., sec. 1783, p. 1341; Berry on Automobiles, 4th ed., sec. 175, p. 167; *Brown* v. *Thayer,* 212 Mass. 392, 99 N. E. 237; *Sterler* v. *Busch,* 197 Iowa, 231, 195 N. W. 369; *Wilson* v. *Fleming,* 89 W. Va. 553, 109 S. E. 810; *Wigginton's Admr.* v. *Rickert,* 186 Ky. 650, 217 S. W. 933; *Davies* v. *Barnes,* 201 Ala. 120, 77 South. 612; *Hilary* v. *Minneapolis Street Ry. Co.,* 104 Minn. 432, 116 N. W. 933; *Bains Motor Co.* v. *LeCroy,* 209 Ala. 345, 96 South. 483; *LaDuke* v. *Dexter,* (Mo. App.) 202 S. W. 254; *State* v. *Weiner,* 101 N. J. L. 46, 127 Atl. 582.)

It is contended that there is not any evidence that Mrs. Russell and Ruddy were racing at the time of the accident and, in consequence, the judgment cannot stand. With this contention we cannot agree. It is obvious from the physical facts, as well as from the testimony of the witnesses, that Mrs. Russell was driving at a high rate of speed when she crashed into the car driven by Schwantz, and there cannot be any doubt that the two cars were racing immediately west of Canyon Creek.

It appeared from witnesses whose credibility and opportunity for observation were for the jury, and whose evidence as to the rate of speed at different points along the way for a distance of approximately 2½ miles west of Canyon Creek was clearly competent and admissible, that for some distance the drivers had engaged in a trial of speed with varying success, and, as they approached Canyon Creek, the Russell car was about to overtake the car driven by Ruddy. Traveling at the estimated rate of speed as given by plaintiff's witnesses, in point of time it was but a fraction of a minute

when the two cars were last observed, until the collision. Ruddy admits that he was traveling at 50 miles per hour at the time of the accident; the fact that he drove through the wreckage, with the two injured men, tools and broken bumper lying in the road, and brought his car to a stop a distance of from 150 to 300 feet from the point of collision, according to the testimony of plaintiff's witnesses, although he testified that he was 250 or 300 feet behind the Russell car at the time of the collision and could bring his car to a complete stop in 100 feet, traveling at the rate of 50 miles per hour; his denial of the testimony of plaintiff's witnesses of the two cars passing and repassing within the 2½ miles; his assertion that Mrs. Russell was racing with another car, which disappeared completely after the accident, are sufficient facts from which the jury was justified in determining that Mrs. Russell and Ruddy were racing at the time of the accident.

The law imposes upon all persons using a public highway the obligation to exercise ordinary care to avoid inflicting injury upon others. Our highways are not designed or maintained as thoroughfares for racing automobiles, and those who use them for this purpose do so at their peril. (*Horsman* v. *Brockton & Plymouth St. Ry. Co.*, 205 Mass. 519, 91 N. E. 897; *Brown* v. *Thayer*, supra; *Reader* v. *Ottis*, 147 Minn. 335, 180 N. W. 117, 16 A. L. R. 463; *Rose* v. *Gypsum City*, 104 Kan. 412, 179 Pac. 348.)

Racing on the highway is a plain and serious danger to every other person using the highway, and a danger often impossible to avoid, and, when a person is injured by such racing, all engaged in the race are liable, although only one of the cars comes in contact with the injured person. (Berry on Automobiles, 4th ed., sec. 180; *Brown* v. *Thayer*, supra; *Reader* v. *Ottis*, supra.) The rule is well settled that, "if the concurrent negligence of two or more persons causes an injury to a third person, they are jointly and severally liable, and the injured person may sue them jointly or severally, and recover against one or all." (*Black* v. *Martin*, 88 Mont. 256, 292 Pac. 577, 580.)

Here the concurrent negligence charged was the racing of the cars driven by Mrs. Russell and Ruddy, which resulted in a collision between the car in which Jones was riding and that driven by Mrs. Russell, and there was sufficient evidence from which the jury must have concluded that the race continued to the point of the collision, and the fact that Ruddy's car did not actually strike the Schwantz car or did not run over Jones' body does not relieve defendant from liability.

Numerous specifications of error relate to the action of the court in giving certain instructions, and refusing to give others tendered by defendant. The record before us does not contain the instructions given to the jury. "It is the rule generally that, where all the instructions are not included in the record, it will be presumed that, were the whole charge before the appellate court, all their imperfections were harmonized and a correct statement of the law was made." (*Howard* v. *Fraser*, 83 Mont. 194, 271 Pac. 444, 446.)

The language of this court in *Renshaw* v. *Switzer*, 6 Mont. 464, 13 Pac. 127, 128, is applicable here: "The record contained only such portions of the instructions as were excepted to by appellant. This is not a fair presentation to this court of the instructions given below. We should have an opportunity to examine all the instructions, and to look at them as a whole. It often happens that the substance of a refused instruction has been given in another, and unless all the instructions are before us a case might be reversed [and remanded] for a new trial for the refusal to give an instruction which in fact had been given in substance in another instruction. Whenever the giving or refusing of instructions is excepted to, all the instructions given or refused should be contained in the record."

Finally, defendant contends that under the pleadings in the case it was incumbent upon plaintiff to prove, not only that Mrs. Russell and Ruddy were racing and that her car struck the car in which decedent was riding, but also that the Ruddy car ran over the body of decedent.

Plaintiff takes the position that it is sufficient to warrant recovery that there was proof of the racing resulting in the death of Jones, without reference to whether the Ruddy car ran over the deceased.

The complaint, after alleging the racing by Mrs. Russell and Ruddy, and that both cars were being driven in a careless and reckless manner and at a rate of speed greater than was reasonable and proper under the conditions and at a speed in excess of 60 miles an hour, contained the charge that the Russell car was negligently driven into the car in which decedent was riding, and that at the same time and place the Ruddy car, while following closely behind the Russell car and only about 100 feet in the rear thereof and too close to avoid running over the decedent and while racing, was heedlessly and recklessly driven upon and over the decedent, who had been hurled from the car in which he was riding, because of the impact with the Russell car.

The complaint then contains this allegation: "That wholly as a result of the collision of the Russell Cadillac automobile with the Ford automobile, which hurled the said Floyd Jones upon the road, and of the Hudson automobile being driven over him by Floyd Ruddy, * * * the said Floyd Jones suffered injuries from which he died some forty minutes later, after suffering excruciating pain and agony. That said death of Floyd Jones was caused wholly by reason of the concurrent negligence and want of care of * * * Mrs. Joseph Russell and on the part of Floyd Ruddy * * * and without fault or negligence on the part of the decedent."

The complaint, fairly and liberally construed, shows that the cause of action is based upon the concurrent negligence of the two drivers in converting the highway into a race track. As a consequence of the race the body of deceased was thrown from the car in which he was riding. Whether his death was produced by the impact causing him to be hurled from the car, or by reason of being run over by the Ruddy car is immaterial. The defendant would be liable therefor if it, through its agent Ruddy, participated in the race. (Compare

45 C. J. 895, and *Marinkovich* v. *Tierney*, ante, p. 72, 17 Pac. (2d) 93.) There was no negligence charged in running the Ruddy car over the decedent, but only that he drove too close behind the Russell car to have his car under control, so as to avoid running over the decedent.

The allegation that the Ruddy car ran over the deceased is but an allegation relative to the sequence of events resulting from the negligent act of racing, and failure to prove the allegation under the circumstances here would simply amount to a failure of proof with respect to an immaterial detail as to how the injury and death occurred. Or, in other words, if the impact between the Russell car and the car in which Jones was riding caused his death, and if the impact was caused by the racing, it is of no consequence whether or not the Ruddy car ran over the decedent. The variance between the manner of death as alleged and as proved would be immaterial in such a situation. (Compare *Kakos* v. *Byram*, 88 Mont. 309, 292 Pac. 909.) The negligence charged—the racing—if proved, and that it produced the death, would be sufficient whether the allegation that the Ruddy car ran over defendant was proved or not.

The fallacy of defendant's contention on this point is in construing the complaint as charging negligence in driving the Ruddy car over the body of decedent. It is not negligence in driving the Ruddy car over the body of decedent but negligence in racing on the part of Ruddy, which is alleged to have concurred with that of Mrs. Russell in producing the death.

Judgment affirmed.

Mr. Chief Justice Callaway and Associate Justices Angstman, Galen and Matthews concur.

Rehearing denied January 31, 1933.