GRAY et al. v. MILLS et al.
No. 14882.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 14, 1947.

Rehearing Denied Dec. 12, 1947.

Frank R. Graves, of Fort Worth, for appellants.

Hill, Paddock & Langdon and Homa S. Hill, all of Fort Worth, for appellees.

McDONALD, Chief Justice.

The parties to this suit are Mrs. Eva Gray and her four children, some of the parties being joined by their respective spouses. Mrs. Gray was formerly married to Benjamin C. Mills, now deceased. To this union were born the four children who are parties to this suit, to-wit, Harry G. Mills, Benjamin C. Mills, Jr., Mabel M. Harper, now a widow, and George W. Mills. The controversy may be summarized somewhat as follows:

Mrs. Gray and her sons, Benjamin and George, claim that in the year 1945 Mr. and Mrs. Gray were contemplating a divorce; that Mr. and Mrs. Gray then resided in a home on Broadway Street, in Fort Worth, which is referred to by the parties as the Broadway property; that an arrangement was made by all concerned to settle the community estate of Mr. and Mrs. Gray. That pursuant to such family arrangement the Broadway property was conveyed by Mr. and Mrs. Gray and the other three children to Harry, in trust, the purpose being that after the divorce the property would be conveyed to Mrs. Gray, or, if it should be sold, that the proceeds would either be divided among Mrs. Gray and the four children, or else held in Harry's hands subject to their order. That Harry sold the Broadway property, and used the proceeds to pay part of the purchase price of what the parties call the Riverside property. They claim that Mrs. Gray, Benjamin and George jointly own an undivided three-fourths interest in the Riverside property, and that Harry and Mabel each owns a one-eighth interest therein, all subject to a lien in favor of the Fidelity Union Life Insurance Company. The suit of Mrs. Gray, Benjamin and George is to impress a trust on the Riverside property, and to have it sold and the proceeds divided among the parties according to their proportionate interests. Relief is sought with respect to some personal property, but the details of that phase of the suit do not require discussion on this appeal.

It is Harry's claim that the entire title, both legal and equitable, to the Broadway property was conveyed to him, and that he consequently owns the Riverside property free of any claim on the part of Mrs. Gray and his two brothers. The sister, Mabel M. Harper, adopts Harry's pleadings, and denies the allegations contained in the pleadings of her mother and the other two brothers.

On a special issue verdict to the effect that the Brodaway property was not conveyed in trust to Harry for the benefit of Mrs. Gray, judgment was rendered that plaintiffs take nothing by their suit. Plaintiffs have appealed. Their first point of error complains of the exclusion of certain testimony. The second complains of the refusal of the court to include in the charge to the jury a definition of the term trust. The third questions the sufficiency of the evidence to support the verdict.

■ First to be considered is a matter of appellate practice. "A ruling sustaining an objection to a question will not be reviewed when the record does not show that the question would have been answered, or what the answer would have been, or in other words, what the witness would have testified to, or what it was expected to prove by him, or when it is not shown that the witness could or would have given the testimony expected to be elicited by the question." 3 Tex.Jur. p. 470. Appellees contend that the record does not meet the requirements of the rule just quoted. Without discussing the details of the controversy concerning this, we hold that the record before us is sufficient to show that the court was apprised of what was expected to be proved by the witnesses, and that the witnesses would have testified as plaintiffs expected them to testify. This last conclusion is reasonable especially in view of the fact that the excluded testimony was that of plaintiffs themselves. While a bill of exceptions may be completed by having the witness testify out of the presence of the jury and by having his testimony incorporated in the bill, it is also a customary practice to show what the excluded testimony would have been by stating to the trial court what is expected to be proved by the witness, and having the

bill of exceptions show that such was done. 3 Tex.Jur. p. 473; Hartfield v. Greber, Tex.Civ.App., 160 S.W. 603; Id., Tex.Com. App., 207 S.W. 85. We think that the bills of exceptions before us, although completed several weeks after the trial of the case, constituted a sufficient compliance with the applicable rules, especially when considered in the light of the testimony, the questions put to the witnesses, the objections made by defendants, the statements of counsel for plaintiffs, and the remarks of the trial judge, all as shown by the statement of facts.

■ Defendants suggest that the excluded testimony was inadmissible because it was a declaration of one who would be the beneficiary if the trust were established, citing 42 Tex.Jur. p. 196. The case cited in the footnote to the excerpt in Texas Jurisprudence demonstrates the flaw in defendants' contention. The self-serving rule referred to applies to declarations attempted to be proved by hearsay, and not to testimony of a party offered in court. One who claims as a beneficiary may testify to facts within his knowledge. Mortimer v. Jackson, Tex.Com.App., 206 S.W. 510.

We now get to the heart of the controversy. Plaintiffs wished to prove that the purpose of executing the deed conveying the Broadway property to Harry was to carry out the plan of settling the community affairs of Mr. and Mrs. Gray, and that it was understood by all concerned that the property was being conveyed to him only in trust, that he should convey it to Mrs. Gray after the divorce, or, if he should sell the property, that he would divide the proceeds among the parties according to their respective interests in the property. In their brief, plaintiffs contend that a resulting trust arose, while defendants contend that the trust sought to be proved was an express parol trust, and that an express parol trust cannot now be established in Texas by reason of the provisions of Article 3995, Vernon's Ann.Civ. St., commonly known as the Statute of Frauds; Article 1288, governing conveyances of land, and the Texas Trust Acts 1943, 48th Leg., p. 232, ch. 148, amended in some respects by Acts 1945, 49th Leg.,

p. 109, Ch. 77, Art. 7425b—1 et seq., Vernon's Ann.Civ.St., and particularly the seventh section of the Texas Trust Act, which provides that a trust in relation to or consisting of real property shall be invalid, unless created, established, or declared by a written instrument. The second section of the Trust Act, however, provides that it does not cover resulting and constructive trusts, and certain other kinds of trusts not necessary to mention here. As has been said, defendants argue that the excluded testimony was offered for the purpose of proving an express parol trust, in violation of the statute just referred to, while plaintiffs argue that the trust sought to be established was a resulting trust.

Much has been written concerning parol trusts, and the applicability of the Statute of Frauds to them. The question for us to decide is whether the trust sought to be proved by plaintiffs was required to be in writing in order to be enforcible. In determining this question we shall look to the pleadings of the parties and the evidence introduced and also the excluded evidence which is in dispute on this appeal, and shall not be governed by the opinions of the parties that the trust is either express or implied, resulting or constructive.

▮ In our effort to reach the correct conclusions in the case before us, we have given study to the discussions in Pomeroy's Equity Jurisprudence, Fifth Edition, Volume 4, beginning with Section 1030, page 58; Restatement of the Law of Trusts, Vol. 1, beginning with Section 44, page 135, and Vol. 2 beginning with Section 404, page 1243; Scott on Trusts, Vol. 1, beginning with Section 44, page 246, and Vol. 3, beginning with Section 404, page 2159; Vol. 2, Bogert, Trusts and Trustees, beginning with § 451, and Vol. 3, beginning with § 495; the annotations in 35 A.L.R. 280; 45 A.L.R. 851; 80 A.L.R. 195; 129 A.L.R. 689; 159 A.L.R. 997; and numerous decisions. Even a casual examination of the authorities reveals irreconcilable conflicts in the views of text-writers and courts concerning the application of the Statute of Frauds to parol trusts. The English Statute of Frauds, St. Charles II, c. 3 (1677), contains a provision somewhat to the same effect as the seventh section of the recently enacted Texas Trust Act, Art. 7425b—7. It has been held in England that where a conveyance of land is made upon an oral trust in favor of the transferor or upon an oral contract to reconvey to the transferor, and the transferee, relying upon the Statute of Frauds, refuses to perform the trust or contract, a constructive trust will be raised in favor of the transferor. It is said that the transferee would be unjustly enriched if he were allowed to retain the land, and that a constructive trust should be imposed to prevent this unjust enrichment. Scott on Trusts, Vol. 1, Sec. 44, page 247; Vol. 3, Bogert, Trust and Trustees, § 495. From the authorities above cited, it appears that the majority of the American courts have not followed the view of the English courts, but a minority of them have. For a clear statement of the conflicting views reference is made to the opinion in Broadway Building Company v. Salafia, 47 R.I. 263, 132 A. 527, 45 A.L.R. 847. The oft-cited case of Faville v. Robinson, 111 Tex. 48, 227 S.W. 938, demonstrates that the Texas courts are aligned with the English and the minority American view. There the grantor conveyed the property upon the oral promise of the grantee that she would devise the property to a third person. The court said:

"It is clearly and rightfully the rule in this State, as was held by the Court of Civil Appeals, that the title to property acquired under such circumstances is subject to a trust and that the trust may be established by parol. Clark v. Haney, 62 Tex. 511, 50 Am.Rep. 536. Where a grant is made on the faith and because of a promise, a breach of the promise is necessarily a fraud, not to be tolerated in equity although the promise be only verbal. In such cases, where the circumstances are such as to deny the right to a rescission, equity will impose a trust upon the property as a means of defeating a fraudulent and wrongful acquisition of the title. In the phrase of Chief Justice Gibson, equity turns the fraudulent procurer of the legal title into a trustee, to get at him. Hoge v. Hoge, 1 Watts, Pa. [163], 214, 26 Am. Dec. 52.

"A verbal promise of the character here pleaded and sought to be enforced is not within the Statute of Frauds. Allen v. Allen, 101 Tex. 362, 107 S.W. 528, does not, as the plaintiffs in error urge, hold that it is. The promise is not to convey any existing interest in real estate. It is made as the means of acquiring the interest. The interest is obtained on the faith of it and it enters into the title. Because so, equity will not permit the grantee to hold the title in repudiation of the agreement."

The provisions of the Texas Trust Act do not have the effect of changing the rule in Texas from that declared in the above case, because it is apparent that in such a case the trust is imposed as a constructive trust, not as an express trust. This view has been criticised on the ground that there could be no fraud in the breach of a promise unless the promise could first be proved, and that the purpose of the Statute of Frauds is to prohibit proof of an oral promise as a basis for establishing a trust. It is said in Klein v. Sibley, Tex. Civ.App., 203 S.W.2d 239, that the effect of the Texas Trust Act was to adopt Section 7 of the English Statute of Frauds, and that the rule should now be the same as it is in those states in which Section 7 of the English Act has been in effect. The facts in Klein v. Sibley are not like those before us, and we find no conflict between the holding in that case and the views we express here. We agree that the Texas Trust Act prohibits express parol trusts in realty, but, according to the English and the minority American view, which we think is expressed in Faville v. Robinson, supra, what we have in the case before us is an effort to prove a constructive trust. We do not undertake to decide whether the English view, or the majority American view, has the better logic to support it. It is our duty to follow the holdings of our own Supreme Court.

We do not wish to be understood as saying that in no event can the Statute of Frauds, or the Texas Trust Act, be interposed to defeat the claim of a parol trust. We only hold that under the doctrine of Faville v. Robinson the trust sought to be established in this case must be classed as a constructive trust, and that by the terms of the Texas Trust Act it does not fall under that Act.

We believe that a constructive trust may be established in the Riverside property for another reason. It is sometimes held that where the grantee agrees to sell the property and pay over the proceeds of the sale to the grantor, or to third persons, and where the sale is made, the proceeds of the sale may be recovered from the grantee on the ground that the essence of the agreement is one to pay money, or to hold personal property rather than realty in trust, and therefore does not fall within the Statute of Frauds, and also on the ground of unjust enrichment. Here the property alleged to have been conveyed in trust was sold, and the grantee in trust used the proceeds of the sale to buy other property. He may be treated as a constructive trustee of the money and of the property into which he put the money. The purpose of this suit is to impress a trust on the Riverside property. The suit does not have to be supported by any express agreement on Harry's part to hold the Riverside property in trust.

Courts have often erected constructive trusts where the property has been conveyed without consideration to someone occupying a confidential relation to the grantor, or to carry out a family arrangement. Restatement of the Law of Trusts, Vol. 1, Section 44, page 135; Scott on Trusts, Vol. 1, Section 44.2, page 253.

It is our conclusion that the trust sought to be impressed on the Riverside property should be viewed as a constructive trust, and that it does not fall within the prohibition of either the Statute of Frauds or the Texas Trust Act. A constructive trust is not rendered unenforcible by reason of the fact that the person sought to be charged as a trustee agreed orally to hold the property in trust or to perform as a trustee. The excluded testimony of the plaintiffs tended to show a confidential relationship between themselves and Harry, it tended to show a family arrangement, it tended to show facts upon which could be based a valid claim for the proceeds of the sale of the Broad-

way property, and it tended to show a wrongful conversion of the proceeds of sale such as would warrant the imposition of a trust on the property which was purchased with such funds.

Appellees argue that the error, if any, in excluding such testimony was harmless because the same facts were shown by other testimony in the record. We do not so construe the record. The appellees were diligent in objecting to any testimony which tended to show that the deed to the Broadway property was any less than a full and complete conveyance of the legal as well as the equitable title, and the trial court consistently sustained all such objections.

The judgment of the trial court is reversed, and the cause is remanded for a new trial not inconsistent with the holdings announced in this opinion.