W. G. MADDOX et ux., Appellants,

v.

GULF, COLORADO & SANTA FE RAIL-
WAY COMPANY, Appellee.

No. 15732.

Court of Civil Appeals of Texas.

Fort Worth.

July 6, 1956.

Rehearing Denied Sept. 14, 1956.

Coleman & Whitten and Earl L. Coleman, Denton, for appellants.

Wigley, McLeod, Mills & Shirley, Galveston, Fred Minor, John Sullivan, T. B. Davis, Denton, Burford, Ryburn, Hincks & Ford, and Robert E. Burns, Dallas, for appellee.

MASSEY, Chief Justice.

The condemner, Gulf, Colorado & Santa Fe Railway Company, proceeded under the provisions of law, Vernon's Ann.Tex.St. Art. 3264 et seq. to acquire 7.96 acres across the appellants' 121.37 acre tract of land in Denton County, Texas. The award of the Special Commissioners appointed for the purpose was in the amount of $16,500. Since the condemner desired immediate possession of the 7.96 acres, it deposited money double the amount so awarded with the County Court under provisions of Art. 3268. The date of such deposit, November 30, 1954, was therefore the date appellants' land was "taken" by condemner. Appellants promptly withdrew the $16,500 which was subject to their order under provisions of the statute.

Trial of the issues made by the pleadings was subsequently had. Condemner was the plaintiff in the trial court, though both parties certified dissatisfaction with the Commissioners' award. The trial was confined to the issue of damages, as to which the appellants carried the burden. The jury found the value of appellants' 7.96 acres of land to have been $2,400, and (through a calculation from answers returned) a diminution in the value of appellants' remaining land of $11,000. The total of these figures is $13,400. Such total is $3,100 less than the amount appellants had received pursuant to the Commissioners' award. The trial court calculated interest thereon at rate of 6% from November 30, 1954, to date of the judgment, an amount of $170.50. Judgment was entered for condemner, against appellants, for the sum of $3,270.50 ($170.50 plus $3,100). Appellants present their appeal.

Judgment reformed. As reformed, judgment affirmed.

At the outset we are presented with appellee condemner's motion to strike a bill of exceptions secured by the appellants. From the statement of facts it appears that as appellants' attorney was cross-examining the condemner's witness R. L. McGalliard the following occurred immediately after said attorney asked the witness the question:

"Did you also appraise the Payne tract of land, the H. M. Payne tract of land?

"Mr. Burns (Condemnaor's attorney): If the court please, I thought we thrashed that out two days ago that we are going to restrict this hearing now, Judge, and that it was the court's ruling that we were going to stay with the Maddox land.

"Mr. Coleman (Appellants' attorney): Your Honor, I propose to show that he appraised every tract for the Santa Fe all the way down the line, and we have got a perfect right to.

"Mr. Burns: Now, does the court think that the court's ruling came within this now,

if the court please, that we were going to try this law suit?

"The Court: I am going to sustain the objection. I don't see that it is material.

"Mr. Coleman: You mean the court is not going to permit me to cross-examine the witness as to how many appraisals he made for the Santa Fe Railway Company?

"The Court: On other appraisals, I don't think it would have any bearing upon the market value of this land.

"Mr. Coleman: It would have a bearing, Your Honor, on the interest of the witness.

"The Court: I will sustain the objection.

"Mr. Coleman: This is cross-examination, Your Honor. This is not direct testimony.

"The Court: I sustain the objection.

"Mr. Coleman: All right, we submit to the ruling of the court and take an exception.

In the bill of exception complained of the foregoing language we have copied from the statement of facts was copied and followed by this language: "This Court certifies that had the witness been permitted to testify, he would have testified that he had made a large number of appraisals for the Plaintiff Corporation, and in each instance had testified before the Special Commission appointed to hear such cases, and in each instance had been paid for his services in making such appraisals by said plaintiff."

█ The basis of condemner's motion to strike is the fact that the bill of exceptions had not been submitted to it before it was granted by the court and filed with the clerk. See T.R.C.P. 372(g). We could go into a discussion of the question of the proper meaning of this and other rules but since we are of the opinion that condemnor suffered no prejudice its motion to strike is overruled.

█ The trial judge's statement, in the nature of evidence as to what the witness' testimony would have been had it been permitted, is no different from what the appellate courts must presume that it would have been when testing the impropriety of the exclusion of McGalliard's testimony upon the matter. 3–A Tex.Jur., p. 535, "Appeal and Error", sec. 421, "Showing Excluded Evidence"; Johnson v. Poe, Tex.Civ.App. Galveston, 1948, 210 S.W.2d 264, error refused, n. r. e.; Gray v. Mills, Tex.Civ.App. Fort Worth, 1947, 206 S.W.2d 278, affirmed in 147 Tex. 33, 210 S.W.2d 985. Furthermore, note the language at page 537 of the cited volume of Texas Jurisprudence, wherein it is stated that the rule requiring a showing of what answer was sought to be elicited is not necessary where the complaint on appeal is of the refusal to permit a witness to answer questions propounded on cross-examination. In this connection it has been stated: "This rule applies mainly to a case where a party is seeking to introduce original evidence, the nature of which he should be expected to know before he offers the same, and is not applicable to a case where the party is cross-examining the witness of his adversary, with whose knowledge of the case he is not supposed to be familiar. In this class of cases we think the better rule is that, if the question appears on its face to be calculated to elicit competent testimony, it is error to refuse the same, although counsel may not be able to state to the court the answer intended or expected to be elicited." Cunningham v. Austin & N. W. R. Co., 1895, 88 Tex. 534, 31 S.W. 629, 631.

█ Proceeding immediately to appellants' points of error, we are made instantly aware that even though several of them might be considered to actually demonstrate errors which occurred in the course of the trial, nevertheless this court will be compelled to consider whether application of T.R.C.P. 434 will inhibit a reversal and remand of the cause for another trial. Since such errors, hereinafter assumed, would be errors of law

incident to the conduct of the trial, we would not be authorized to reverse the case because thereof unless they amounted to such a denial of the rights of the appellants as was reasonably calculated to cause and probably did cause the rendition of an improper verdict and judgment.

■ This court is well aware of the decided philosophical change made in the law as the result of the adoption of Rule 434 and Rule 503 by the Supreme Court. For one example, it is to be noted that in connection with a case where the point of error presented was erroneous exclusion of testimony, it was once the law that "If the evidence in the case upon the issue on which the excluded evidence was offered *be conflicting,* and if it *does not appear that the evidence if admitted could not properly have influenced the jury to render a different verdict,* the exclusion of such evidence becomes material error, and the judgment must be reversed." (Emphasis added.) Trinity County Lumber Co. v. Denham, 1895, 88 Tex. 203, 30 S.W. 856, 857. Under the present rules, this statement would be wholly improper for the party seeking reversal must show (even though evidence on the point is conflicting) that *but for the exclusion of such testimony the jury would in all reasonable probability have returned a verdict other than the verdict it did return.*

In an article entitled "The Problem of Appellate Review", by Edson R. Sunderland (1927), to be found in 5 T.L.R. 126, 148, the extension of the doctrine of harmless error was advocated. Author Sunderland attributed considerable merit to the fact that in a single year (1924) not a single case from the King's Bench Division of the English courts was reversed because of trial court errors in admitting or excluding evidence. He argued that since the results of jury trials, i. e., verdicts, are indisputably influenced by many intangible factors, as, for example: the education, religious convictions, social habits, prejudices, etc., of each juror; the same elements plus vagaries of memory, effect of imagination, suggestion, personal capacity for observation, and influence of interest, for every witness; skill of lawyers in eliciting evidence and appealing to the jury; and accidents of trial,—it is absurd to reject a verdict because of errors elsewhere in the trial which affect the result to a lesser degree than these unknown elements. The author's conclusion was that in reversing trial court judgments for the "errors elsewhere in the trial", and which appear on the face of the cold records, our courts have "strained at the gnat * * and swallowed the camel. * * *" He believes that reversals because of such errors demonstrate a failure on the part of the courts to serve the main purpose of their existence.

In an article entitled "The Development of the Doctrine of Harmless Error in Texas", by Judge Robert W. Calvert (1952), to be found in 31 T.L.R. 1, 18, the historical background of T.R.C.P. 434 and 503 is traced into said rules and through the decisions to November of 1952. Seemingly accepting the principles declared upon in Sunderland's article, Judge Calvert concluded that in the testing of an error contemplated by these rules the query should be made as follows: "Was this error reasonably calculated to cause and did it probably cause the entry of an improper judgment in the case?" So long as an appellate court, in deciding a case, recognized the test to be applied and that the burden thereon is properly placed, the Supreme Court had not, prior to November, 1952, sought to work out a formula by which it (and the Courts of Civil Appeals) would be guided in all cases. Rather did the court seem to recognize that the issue of prejudicial or harmless error was one to be entrusted to the sound discretion and good sense of the appellate courts, to be determined from a study of the record as a whole.

More recently the Supreme Court seems to have found it appropriate to test the

error by a consideration of whether the jury was thereby persuaded to return a verdict contrary to the verdict it would have returned had the error not occurred. In the case of Goforth v. Alvey, 1954, 153 Tex. 449, 271 S.W.2d 404, a case in which the matter complained of was a rather unusual jury argument, apparently conceded to have been error, Chief Justice Hickman said, "In our view no juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument."

Logically this test would likewise apply to evidence improperly admitted or improperly excluded. As to evidence improperly excluded, it would appear that before an appellate court could reverse and remand a case because thereof it must conclude that "in all reasonable probability the jury returned a verdict other than that which it would have returned had it received the benefit of the evidence which was excluded." Of course, we recognize the difficulties confronting a complaining party under the present restrictions applicable to the introduction of evidence from jurors upon the matter of influences controlling the return of answers in a verdict, but under the existing rules of law appellate courts must bear the burden of resolving the question of probable harm as a matter of law.

■ In applying the tests under T.R.C. P. 434, we are required to examine the whole record. We have prepared a chart of the amounts testified to by the various witnesses, material in the testing of the assumed errors in the instant case.

## Schedule

| Witnesses | Value of 7.96 ac. taken | Value remaining property before condemnation | Value remaining property after condemnation | Difference or damages |
|---|---|---|---|---|
| Appellants': | | | | |
| Raymond D. King | $5,700.00 | $79,100.00 | $50,850.00 | $28,250.00 |
| George Ritter | 3,980.00 | 81,500.00 | 50,000.00 | 31,500.00 |
| George Williams | 4,000.00 | 82,500.00 | 50,000.00 | 32,500.00 |
| C. P. Masters | 3,200.00 | 70,900.00 | 44,005.00 | 26,895.00 |
| Jack Brewton | 3,980.00 | 67,500.00 | 40,000.00 | 27,500.00 |
| V. R. Clearman | 3,980.00 | 85,000.00 | 50,000.00 | 35,000.00 |
| Condemner's: | | | | |
| John Feuerborn | 1,592.00 | 22,689.00 plus house | 15,970.00 plus house | 6,719.00 (No house Depreciation considered) |
| W. R. Yeary | 1,194.00 | 36,950.00 | 32,863.00 | 4,087.00 |
| Sam Randall | 1,592.00 | 42,682.00 | 38,049.00 | 4,633.00 |
| R. L. McGalliard | 1,592.00 | 50,432.00 | 44,990.00 | 5,442.00 |
| Jury Findings: | 2,400.00 | 66,000.00 | 55,000.00 | 11,000.00 |

Total amount found: $13,400.00 ($2,400.00 plus $11,000.00)

Assuming, without deciding, that error is presented by appellants' points of error numbers 1 to 5, inclusive, and number 7. We are of the opinion that such assumed

error or errors, would not amount to reversible error and would not justify the remand of the cause for another trial.

In what we have written concerning condemner's motion to strike it was made apparent that appellants were denied the right to go into the matter of bias or interest of the condemner's witness McGalliard. Appellants predicate their first point of error thereupon. From the schedule it is to be noted that this witness' testimony regarding the value of the property "taken" was computed on the basis of $200 per acre, identical to the amount testified to by condemner's witnesses Randall and Feuerborn, and higher than the amount testified to by condemner's witness Yeary. Most of appellants' witnesses computed this value on the basis of $500 per acre, though Mr. King's appraisal was higher and Mr. Masters' a little lower. McGalliard's testimony concerning the value of the remainder of appellants' property prior to the "taking", $50,432.00, was higher than the appraisal testified to by any other witness for condemner. Testimony upon the matter of such value from appellants' witnesses varied from Mr. Brewton's figure of $67,500 up to Mr. Clearman's figure of $85,000. The jury found such value to have been $66,000. McGalliard's testimony concerning the value of the remainder of appellants' property subsequent to the "taking", $44,990, was about the same as the figure testified to by one of appellants' witnesses, was higher than one, and lower than the other four of appellants' witnesses. The jury found such value to have been $55,000, nearly $5,000 more than McGalliard's estimate of the property's worth prior to the "taking". It seems that the jury disregarded McGalliard's testimony as to each of the values. McGalliard's testimony as to value of the 7.96 acres was cumulative of other testimony from condemner's witnesses. His testimony as to value of the land after the "taking" was more favorable to appellants than four of appellants' own

witnesses, in that the amount testified to was lower. We believe that application of tests under T.R.C.P. 434 leads to a logical conclusion that reversible error is not shown.

By appellants' point of error number 4 complaint is made that the court should not have admitted the testimony of John Feuerborn upon the matter of market values, such witness not having been shown to be qualified to express any opinion thereon. During the course of his testimony this witness admitted that he was not prepared to give testimony as to the value of the appellants' remaining property after the 7.96 acres were "taken" except by an utter disregard of the fact that appellants' house was located on one portion thereof. He did testify as to the value of the property "taken". An analysis of his testimony, considered in light of the whole record and the jury's verdict, demonstrates that the error in admitting his testimony (which we assume for the purpose) no more requires a reversal of the judgment than the error connected with McGalliard's testimony.

By appellants' points of error numbered 1, 2, and 3, complaint is made because the trial court admitted testimony showing that a tract of land adjoining that of the appellants sold for a price of $175 per acre about the same date of the "taking" of appellants' 7.96 acres,—because the trial court overruled appellants' motion to strike such testimony after it was in the record,—and because of the court's statement made in connection with the admission of such testimony that, "I believe that the sale is within a reasonable time and not remote." Appellants contend that error was apparent because the evidence showed that said adjacent land was not comparable to that involved in the suit, hence inadmissible, and they contend further that the court's remarks constituted a comment on the weight of the testimony. Though we assume (for the sake

of the question) that there was error, nevertheless we cannot say that it probably caused the return of an erroneous verdict or the entry of an erroneous judgment. Even condemner's witnesses value appellants' land at a figure in excess of that paid for the adjacent tract, and the jury valued the land of the appellants which was "taken" at a figure nearly twice as much as the adjacent tract sold for.

By appellants' point of error number 5 complaint is made of an instruction of the court in its charge, given in connection with the special issue inquiring about the value of appellants' remaining land immediately after the "taking" of the 7.96 acres. The jury found the amount of $55,000. The instruction complained of reads: "In considering your answer to this question, you will not take into consideration changes in the physical condition of the Maddox house, if any, occurring after November 30, 1954."

 It is to be remembered that November 30, 1954, the date condemner deposited the $33,000 in the court, was the date appellant's 7.96 acres were "taken". The court's charge so instructed the jury. Appellants introduced evidence showing that after said date the construction of the railroad across said property was begun, said operations involving some explosive blasting. Appellants also introduced evidence to show that their residence building, located on a portion of the land not "taken", was damaged as a result of the blasting. This evidence was admitted over the repeated contentions of condemner that it related to a time after the "taking", was not matter involved in a condemnation case, and that the construction and blasting was not shown to have been performed by the condemner rather than by an independent contractor. Obviously the instruction of which complaint was made was given in an attempt to obviate any consideration by the jury of the physical damage to appellants' home resultant from railroad construction, as opposed to con-

demnation of the property for the ultimate purpose of building a railroad. In view of the state of the record, we are satisfied that appellants do not demonstrate that the instruction given the jury was reasonably calculated to cause and probably did cause it to return a verdict other than the verdict it would otherwise have returned.

In brief, and as to the errors assumed for the purpose and hereinabove discussed, it is not demonstrated that any answer returned by the jury was in reasonable probability contrary to any answer it would have returned but for the occurrence of the individual errors complained of.

By their point of error number 6 the appellants contend that the essential finding of the jury in connection with the market value of their remaining property after the 7.96 acres were "taken" was not supported by any evidence and was not within the range of the testimony. It is to be noted from the Schedule that the jury found $55,000 as the value of the appellants' remaining property. The highest value given the property at the material time was by one of the appellants' witnesses, and that value was only $50,850.

 That the circumstance presents no error is apparent when one considers that under a generally approved system of submitting issues in a condemnation case, whereby the court computes the damages from the jury's answers, the limitation upon the jury is different from that applicable in the submission of an ordinary issue on damages. In an ordinary damage issue the jury is restricted to the maximum damage figure testified to. That is the "ceiling" of the range of the testimony. In a condemnation case where the evidence indisputably establishes that there is a decrease in value of a condemnee's remaining land, after and as the result of a "taking", the jury is confined to the maximum figure testified to when they find the value of condemnee's remaining property immediately before condemnation,—but when they find

the value of condemnee's remaining property immediately after condemnation they are restricted only by the lowest figure testified to. See Houston Belt & Terminal R. Co. v. Lynch, Tex.Civ.App. Galveston, 1916, 185 S.W. 362, affirmed in Tex.Com. App., 221 S.W. 959. Within these limits it is the jury's province to return answers. The $55,000 figure found by the jury in this case, being higher than the lowest figure testified to, is supported by the evidence.

■ Appellants present a point to the effect that costs should not have been entered against them. Their contention is predicated upon V.A.T.S. Art. 3267, wherein it is provided that costs are to be adjudged against the property owner when *either the commissioners' award or the court's judgment is for the same or less than the amount offered him prior to condemnation.* We are unable to ascertain from the record what amount had been offered appellants prior to the institution of condemnation proceedings. We do not believe appellants have demonstrated the error of which they complain. The point is overruled.

Under the verdict of the jury appellants' loss and damage was fixed at $13,400. This meant that, since appellants had withdrawn the $16,500 deposited to their order by condemner pursuant to V.A.T.S. Art. 3268, they got $3,100 more than the amount the jury found should be paid. By judgment entered January 13, 1956, the trial court found that interest of $170.50 should be charged against the appellants for the use of the $3,100 to judgment date. The judgment entered against appellants and in behalf of the condemning railway company was for $3,270.50 rather than $3,100.

■ Appellants have predicated a point of error because thereof. It appears that no case has heretofore passed upon the question presented, though some dicta to the contrary of our own conclusion appears in the case of Housing Authority of City of Dallas v. Dixon, Tex.Civ.App. Dallas, 1952, 250 S.W.2d 636, writ ref., n. r. e. Realizing full well the logic of an argument to the contrary, we nevertheless believe the more rational rule to be established in such a case would be that which denies a condemnor any right to recover interest on such an overpayment. A condemner is not compelled to pay the amount found by the commissioners to the property owner, or deposit it in the court. A condemner is given the option of doing so and "taking" property without further delay, or delaying its "taking" until judgment has become final. A property owner has no similar right of election, but must abide by the election of the condemner. When the condemner elects to "take" the property without delay it delivers the amount of the commissioners' award to the property owner, or deposits it in court subject to his order. In either event the condemnee receives full control of the money perforce the statute's operation. Constructively, his consideration therefor is paid in the delivering of his property to the condemner, or, if it not be proper to view the transaction as one wherein a consideration moves out of the property owner, nevertheless such property owner cannot prevent the money from coming under his dominion. In our opinion it matters not which should be considered the proper basis for the rationale, the property owner should not be charged interest on the money. The trial court erred in including same as part of the judgment.

The judgment is reformed to adjudge the amount of $3,100 against appellants W. G. Maddox and wife, Ruth Maddox, and in favor of the Gulf, Colorado & Sante Fe Railway Company, as of judgment date, January 13, 1956, plus legal interest. Costs of appeal are assessed against the Gulf, Colorado & Santa Fe Railway Company.

As reformed, judgment is affirmed.

RENFRO, J., concurs in the result reached by the Chief Justice.

**508**

BOYD, Justice (dissenting).

I think the judgment should be reversed and the cause remanded because of the refusal of the trial court to permit appellants fully to cross-examine the witness McGalliard, which action is reflected by the record and the bill of exception and is clearly explained in the opinion of this court.

The right to cross-examine a witness who has testified for the adverse party is a right given by law and not a mere privilege to be accorded or withheld by the trial court. 70 C.J., p. 611, sec. 779B, and cases cited in Note 33; 58 Am.Jur., p. 340, sec. 611. The purpose of cross-examination is to weaken the adversary's case. One legitimate method of doing that is to discredit his witnesses or draw from them admissions which might affect their credibility. Evidence which might tend to lessen the weight of testimony from adverse witnesses is as clearly admissible as evidence which would constitute a complete refutation.

The employment of the witness by a party to the suit is a proper subject of inquiry. It may or may not affect his credibility. That determination is for the triers of the facts. 70 C.J., p. 974, sec. 1172(2), and Note 70. The right to show a witness' business connection with a party is as clear as the right to show that he is a kinsman of the party, or even his spouse.

I think the court's holding in this case extends the doctrine of harmless error in a direction and to an extent not contemplated by the authors of Rules 434 and 503 and not comprehended by the rules themselves.

That admissible evidence, which is relevant and material to the issue under investigation, ought to be admitted, is self-evident. From the proposition that under our procedure the exclusion of competent and material evidence is harmless error, I dissent. If it is the law, I protest.