**Jessie James ROGERS, Appellant,**

v.

**J. P. MURRELL, Appellee.**

**No. 8108.**

Court of Civil Appeals of Texas, Amarillo.

May 3, 1971.

Rehearing Denied June 1, 1971.

Stokes, Carnahan & Fields, Richard E. Stokes, Jr., Amarillo, for appellant.

Cox & Hurt, Steve L. Hurt, Plainview, for appellee.

ELLIS, Chief Justice.

This is an action brought by plaintiff, J. P. Murrell, appellee herein, against defendant, Jessie J. Rogers, appellant herein, to recover damages to appellee's automobile arising out of an automobile collision occurring on the 20th day of August, 1969, in Swisher County, Texas. The case was tried before a jury. On the jury verdict judgment was entered in favor of appellee, and from such judgment appellant has perfected this appeal and assigned eleven points of error.

In the first nine points of error (grouped and argued together as "no evidence" and "insufficient evidence" points), the appellant takes the position that the trial court erred (1) in failing to instruct a verdict for the appellant and (2) in failing to render a judgment for the appellant notwithstanding the jury verdict, insisting that the evidence supports his contention that the collision and damages to the appellee's automobile grew directly out of the deliberate and voluntary participation by the parties in an automobile race or contest for speed upon a public highway in violation of Article 795 of the Texas Penal Code. In this connection, it is further contended that by reason of the parties' deliberate and voluntary participation in such illegal conduct

neither participant is legally liable for damages sustained by the other as a result of the collision. The appellant also insists that he is not liable under the evidence in this case because the damages complained of resulted not from merely driving in a race but from the prohibited act of the *holding* of a race upon a public highway. Appellant contends, in short, that as a matter of law under the status of the evidence, there is no evidence, or insufficient evidence, to justify the trial court's submission of any of the various issues to the jury or to support the jury's findings made thereto. Especially does appellant contend that there is no evidence, or insufficient evidence, to support the court's submission of either Special Issue No. 11 inquiring as to whether at the time of the occasion in question, the appellee's son was in an automobile race or contest for speed upon a public highway in Swisher County, Texas, or the related proximate cause issue (Special Issue No. 12). The other ten issues submitted to the jury were unrelated to the matter of "racing" and involved various other alleged acts of negligence at or about the time of the collision, along with the inquiry as to the amount of damages resulting therefrom to appellee's automobile.

The established public policy of this state prohibiting the holding of automobile races upon a public highway is set out in Article 795 of the Texas Penal Code which provides:

"No race or contest for speed between motor vehicles of any kind shall be held upon any public highway."

A considerable portion of the facts surrounding this controversy are undisputed. Appellee's son, Joe Charles Murrell, and appellant voluntarily agreed to hold a race between two automobiles on the State Highway 87 between the Shamrock Cafe in Tulia, Texas, and Kaffir Switch, a distance of approximately five miles. Each party admitted that he knew that such racing was prohibited by law. At the beginning of the race, the automobile driven by Joe Charles Murrell was in the right lane and appellant's vehicle was in the left lane of Highway 87. For a short distance the Murrell automobile gained the quicker acceleration and led in the race until it was later passed by the appellant's automobile. After passing the Murrell automobile, the appellant turned his automobile into the right lane and continued to drive north on the highway toward Kaffir Switch. Subsequently, Joe Charles Murrell, appellee's son, who was behind the appellant, turned the automobile he was driving into the left lane and continued to drive northerly in such lane toward Kaffir Switch. Appellant started decreasing the speed of his automobile when he was about one-half mile south of the crossover at Kaffir Switch. Joe Charles Murrell testified that he decreased the speed of the automobile he was driving after he had traveled about one-half or three-fourths of the distance from Tulia to Kaffir Switch, and also stated that he further slowed down for approximately the last half mile before reaching Kaffir Switch. As both automobiles approached Kaffir Switch, appellant made a left turn from the right lane, whereupon Joe Charles Murrell applied his brakes and went into a spin and the automobiles collided with the automobile driven by Murrell striking the appellant's automobile. The impact occurred at or near the paved highway crossover at Kaffir Switch.

■ Appellee contends that his son, Joe Charles Murrell, had stopped racing about a half mile before the collision occurred although he continued to drive the agreed course and distance. If, under the evidence, Joe Charles Murrell was in the act of racing when the collision occurred and was thereby involved in the deliberate and unexcused participation in the violation of Article 795, such act constitutes negligence per se, contributory negligence as a matter of law and no liability against the appellant for damages. Parrot v. Garcia et al., 436 S.W.2d 897 (Tex.Sup.1969); Shaver v. Manziel, 347 S.W.2d 20 (Tex. Civ.App.—Texarkana 1961, writ ref'd).

Also, if under the evidence, a party's deliberate participation in conduct which sets in motion an unbroken chain of causation events leading directly to a reasonably foreseeable result, such party is not entitled to recover for any damages sustained. Puryear v. Porter, 153 Tex. 82, 262 S.W.2d 933 (1953); Enloe v. Barfield, 422 S.W.2d 905 (Tex.Sup.1967); Carter v. Harrison, 447 S.W.2d 704 (Tex.Civ.App.—Fort Worth 1969, writ ref'd n. r. e.).

In its answer to Special Issue No. 11, the jury found that Joe Charles Murrell was not in an automobile race or contest for speed upon a public highway at the time of the occasion in question. By such answer, the jury determined, in effect, that the race was over prior to the collision in question. Further, besides the finding of "no racing," the jury found five separate acts of negligence on the part of the appellant, including various aspects of his conduct in connection with the turning of his vehicle to the left from the right lane of traffic as well as failure to keep a proper lookout. Also, each such act was found to be a proximate cause of the collision in question. No acts of negligence were found against the appellee's son.

Under the evidence in this case, both motorists admit that there was an agreement for holding the race and that the race got under way. The vital question for determination in this appeal is whether the race was terminated or abandoned prior to the collision. The appellee insists that there is sufficient evidence to support his contention that the race was terminated some substantial time and distance prior to the collision while appellant takes the position that the racing was continued up until the time of the collision and as a matter of law neither party can recover for damages resulting from their joint participation in the unlawful act of racing on a public highway.

After carefully considering the entire record, we hold that the evidence raises a genuine fact issue as to whether the race was still in progress at the time of the collision. The question of fact as to whether the two motorists were racing and whether the collision was proximately caused by the racing is for the jury. Jones v. Northwestern Auto Supply Co., 93 Mont. 224, 18 P.2d 305 (1932); Lemons v. Kelley, 239 Or. 354, 397 P.2d 784, 785 (1964). If the appellee's son had in fact abandoned the race to the knowledge of the other participant, he could not be held guilty of contributory negligence solely by reason of having previously engaged in the prohibited act. Boykin v. Bennett, 253 N.C. 725, 118 S.E.2d 12, 16 (1961). If the appellant had no knowledge that the appellee's son had withdrawn and supposed that the race was still in progress then the appellant would still be responsible as a joint tort feasor, and this status continued as long as either party acted under and within the scope of the agreement for the race without knowledge of its abandonment by the other party. Saisa v. Lilja, 76 F.2d 380 (C.C.A.Mass. 1935).

In the instant case, it is deemed appropriate to review the evidence insofar as pertinent to the vital question as to whether the appellee's son had in fact abandoned the race, and, if so, whether appellant had knowledge of such abandonment. Thus, under the record, if the evidence establishes that the accident happened after the race between the parties had in fact terminated, then the issue as to liability for the damages must concern some act or acts other than the previous racing of the automobiles. Williams v. Jackson, 436 S.W.2d 956 (Tex. Civ.App.—Amarillo 1968, writ ref'd n. r. e.).

The only testimony in this case was given by the respective drivers of the two automobiles involved in the collision. The appellant testified that halfway or three quarters of the way from the cafe in Tulia to Kaffir Switch he made the decision that appellee's son could not catch him and he slowed down since he would not have to go full speed to beat him. He also testified that he began to slow down further for the

purpose of making the turn at Kaffir Switch about a half a mile south of Kaffir Switch. On cross examination the appellant admitted that he had previously stated in his deposition that he had slowed down "almost to a stop" before he began to turn at Kaffir Switch and that when he began to turn he thought the race was over. Also, during cross examination at the trial on March 31, 1970, concerning the appellant's statement in his previous deposition (taken in December, 1969) to the effect that it was his best estimate that appellee's son was a half mile behind him when he (the appellant) began to slow down, the statement of facts discloses the following questions by appellee's attorney and the answers made thereto by appellant:

Q All right. But let me ask you this. Was your testimony correct that you gave me on deposition when you said, "I thought he had quit, which," —and this was directed to Mr. Murrell—"you might have. I don't know." Is that true, that you thought he had quit?

A Well, either that or—the way I understood it, his car would run real fast, and he must have—I don't know. Maybe not.

Q Well, I'm asking you this, though. Would your testimony still be the same as it was on deposition?

A I thought he had quit, which he might have.

Q Yes.

A He would have to answer that. I don't know. He might have.

Q I was asking you right now about your opinion, though, that you testified to on deposition.

A If I had been him, I guess I would keep from tearing up my car or killing myself, I would have slowed down, because I was ahead.

Q But you do remember testifying that you thought he had quit, do you not?

A I guess, yes, sir.

Q As far as you know, that's what your testimony was back in December?

A Yes, sir.

Q All right. Let me just continue here with your testimony when I asked you next: "Well, do you base that estimate on what, on how long since you had passed him, or were you looking in your rear-view mirror or looking back or what?" And you answered: "Looking and seeing his lights behind me." And I said: "This was when you first began to apply your brakes?" And you answered: "Well, yeah, in there somewhere, yeah, when I first— whenever—I must have looked back then, or I would think I did. I then —and then started putting on my brakes, because—well, it must have been a half mile before the finish, and the race was over. I'm sure he was slowing down, too. I don't know. You might"—Now, do you remember testifying to that on your deposition?

A Yes, sir.

Q That you had slowed down a half mile before the finish, and the race was over?

A Oh, I started—that I had slowed down a half mile before? Yes, see, he was way back. That's right.

In a subsequent portion of the cross examination the appellant admitted that he testified on deposition in December, 1969, to the effect that he was not trying to outrun anybody and hadn't been for a half mile or so before reaching the finish line. In another portion of the cross examination the appellant was asked: "Aside from the fact that you all were there, which if you hadn't been racing, I agree you wouldn't have been there, do you know of

any reason for the accident occurring other than your turning left in front of him?" He responded, "I don't guess so."

The appellee's son, Joe Charles Murrell, testified that at the beginning of the race he got ahead of the appellant and then the appellant passed him before he got his automobile to full acceleration and he was never able to catch up with appellant again. He further testified that he did not maintain full acceleration of his automobile all of the way to Kaffir Switch, but he ceased to maintain full acceleration of his automobile and started slowing down about a half mile south of Kaffir. He further stated that at the time he got to the crossover at Kaffir immediately before the collision he was traveling under 65 miles per hour and that he had already slowed down when the impact occurred. Although the appellee's son had insisted that the race was terminated prior to the collision it should be pointed out that in response to questions on cross examination by appellant's counsel he stated that he "voluntarily entered that race for contest or speed," and when asked, "And you ran it, didn't you?" his answer was, "yes, sir."

■■ Also, it is here noted that during the course of the direct examination by appellee's attorney, the appellee's son was permitted to give testimony over objection by appellant's counsel to the effect that he was not racing immediately before the collision occurred and that he had ceased to race about a half mile before reaching the crossover at Kaffir Switch. The appellant's attorney objected to the testimony on the ground that it was self-serving, called for an opinion and conclusion of the witness and invaded the province of the jury. Such objection constitutes the appellant's grounds for his eleventh point of error. The fact that the testimony may have been self-serving does not make it inadmissible. In Gray v. Mills, 206 S.W.2d 278 (Tex.Civ. App.—Fort Worth 1947, affirmed (1948) 147 Tex. 33, 210 S.W.2d 985), the court stated:

"The self-serving rule referred to applies to declarations attempted to be proved by hearsay, and not to testimony of a party offered in court."

Also, see McCormick and Ray, Evidence, Vol. 1, Sec. 786, p. 569. As to the remaining objections to the admission of the testimony, in view of the other testimony admitted without objection concerning the agreement to the "race," including the admission by appellant to the effect that he had decided the appellee's son had quit the "race" and the statements given concerning "slowing down" along with other evidence relating to the actions of the parties, the testimony objected to amounted in substance to no more than a cumulation of similar evidence that had been introduced without objection. Even if the statement per se be deemed inadmissible, in view of the cumulation of other testimony to the same general effect, we hold that the admission of such statement, even if erroneous, was harmless. See Ratliff v. Clift, 312 S.W.2d 315, 319 (Tex.Civ.App.—Amarillo 1958, writ ref'd n. r. e.); Cartwright v. Minton, 318 S.W.2d 449, 455 (Tex.Civ.App.—Eastland 1958, writ ref'd n. r. e.); Fain v. Texas-Hanover Oil Co., 354 S.W.2d 949, 957 (Tex.Civ.App.—Austin 1962, writ ref'd n. r. e.).

■ Appellant further contends that the court erred in failing to submit his requested Special Issue No. 1 proposing to inquire of the jury as to whether at the time of the accident in question Joe Charles Murrell voluntarily exposed himself to the risk, if any, of driving on the highway. It is here noted that the issue as proposed and requested would submit the question of voluntary exposure to risks to driving on the highway rather than to the act of racing or holding a race on a highway in accordance with the agreement of the parties. Since it is uncontroverted that the parties had voluntarily agreed to hold the "race" on the highway, and each party admitted that he realized that such racing was a dangerous activity, we hold that the ultimate fact question to be determined as a

basis for liability, if any, arising by reason of "racing" upon a public highway was sufficiently encompassed in Special Issue No. 11 which inquired as to whether "at the time of the occasion in question Joe Charles Murrell was in an automobile race or contest for speed upon a public highway in Swisher County, Texas."

We have carefully considered the cases of Parrot v. Garcia, et al., supra, and Shaver v. Manziel, supra, cited by appellant and have concluded that the instant case is distinguishable from those cases on the facts. Also, since only the two drivers of the vehicles are here involved it does not appear that under the facts of this particular case, the distinction between "being in a race" and participation in the prohibited act of "holding a race" (referred to in Parrot v. Garcia, et al., supra) is applicable. Further, if the jury's finding that Joe Charles Murrell was not in a race or contest for speed at the time of the occasion in question can be sustained, then the "zone of danger" (an area beyond the point at which a race had been finished) discussed in Parrot v. Garcia, et al., supra, is not pertinent to this case.

 After carefully reviewing all of the evidence and the issues as submitted pertaining to the vital question to be determined in this appeal, we have concluded that there is sufficient evidence to justify the court's submission of the issue as to whether Joe Charles Murrell was engaged in an automobile race upon a public highway at the time of the occasion (collision) in question, and that there is sufficient evidence of probative force to support the jury's negative answer to such issue. It is well established that the jury is entitled to believe all, part or none of the testimony of any witness and can draw its own conclusions therefrom. A comparison of the appellant's testimony at the trial with that given in his previous deposition discloses certain inconsistencies. Also, discounting the testimony of Joe Charles Murrell which was admitted over the objection of appellant's counsel to

the effect that he had "quit the race," and although a portion of his answer on cross examination may be considered as inconsistent with his previous insistence that the race was over, there remains other evidence before the jury, when considered cumulatively, to support the jury's findings. Apparently, the jury chose to believe the appellant's deposition testimony along with other evidence and circumstances tending to show that the race or contest had in fact been abandoned to the knowledge of both original participants. The jury was in a position to observe the parties and their demeanor, determine their credibility, consider all their actions and the circumstances, together with reasonable inferences therefrom, and thus make the ultimate finding that Joe Charles Murrell was not in an automobile race or contest for speed at the time of the occasion in question.

In view of the foregoing, we find no reversible error and affirm the judgment of the trial court.